BARNEY *v.* PREFERRED AUTOMOBILE INSURANCE EXCHANGE.

1. JUDGMENT—GARNISHMENT — ISSUES DECIDED IN PRINCIPAL ACTION CONCLUSIVE.

In garnishment proceedings against an automobile insurance company by one who had secured a judgment against a policyholder in defendant company, the findings of the jury upon the questions of insured's intoxication and whether he furnished defendant with the summons served upon him in plaintiff's action against him, as required by the policy, *held*, conclusive upon those issues in the instant case.

2. GARNISHMENT—WILL LIE IN TORT ACTION AFTER JUDGMENT.

Under 3 Comp. Laws 1915, § 13122, a judgment on verdict in a tort action is an indebtedness subject to garnishment after entry of judgment.

[1]Appeal and Error, 4 C. J. § 2834; [2]Garnishment, 28 C. J. § 29.

3. INSURANCE—TECHNICAL CONSTRUCTION OF POLICIES NOT FAVORED —LIBERALLY CONSTRUED IN FAVOR OF INSURED.

Technical construction of insurance policies is not favorably viewed, and obscure or ambiguous provisions are to be liberally construed in favor of the insured; they being the production of the insurer.

4. SAME—AUTOMOBILE INSURANCE—LIABILITY OR INDEMNITY POLICY —AMBIGUOUS POLICY CONSTRUED.

Where a policy insuring an automobile owner against liability for personal injuries to third persons is so ambiguously worded as to tincture its provisions as both a contract of indemnity and also a contract to pay liabilities, it is construed as a contract rendering the insurer liable for a judgment against the insured even before it is discharged, in the absence of a "no action" clause, which would have made clear its questionable language.

Error to Kent; Barton (Joseph), J., presiding. Submitted October 21, 1926. (Docket No. 91.) Decided October 3, 1927.

Garnishment proceedings by Lansford C. Barney against the Preferred Automobile Insurance Exchange, garnishee defendant of Harry F. Whitaker, principal defendant. Judgment for plaintiff. Garnishee defendant brings error. Affirmed.

*Knappen, Uhl & Bryant,* for appellant.

*Fred P. Geib,* for appellee.

STEERE, J. This action is in garnishment based upon an automobile insurance policy issued by the garnishee defendant to the principal defendant. Plaintiff was injured on September 21, 1925, by an automobile driven by Harry F. Whitaker, principal defendant. He brought an action against Whitaker to recover damages for his injuries and secured a judgment against him on December 30, 1925, in the sum

---

[3]Insurance, 32 C. J. §§ 262, 265, 266; 14 R. C. L. 926; 3 R. C. L. Supp. 316, 317; 4 R. C. L. Supp. 930, 931; 5 R. C. L. Supp. 787; 6 R. C. L. Supp. 840, 841; [4]Id., 32 C. J. § 265; Motor Vehicles, 28 Cyc. p. 50 (Anno).

of $3,500 and costs.    The garnishee defendant took no part in the trial of the principal case.    The judgment had not been paid on February 24, 1926, when this writ of garnishment was issued and served, in response to which appellant filed a disclosure of no indebtedness.    At the close of plaintiff's testimony, a motion was made by the garnishee defendant for a directed verdict which was then denied and renewed at the close of all testimony.    Decision was reserved by the court under the Empson act.    The case was submitted to the jury.    A verdict in favor of plaintiff was rendered in the sum of $3,659.10, and judgment upon verdict soon thereafter entered.

It is indicated from a colloquy between the trial judge and one of appellant's counsel that there was some misunderstanding between them regarding a postponement before entering judgment.    A motion was soon made to set it aside, which was denied, and for a new trial, which was not granted, the presiding judge filing his reasons for such ruling.    Touching the details of proceedings after verdict, though apparently somewhat stressed, it need only be noted that all questions raised during the trial and afterwards have been properly saved for review by timely objections, motions, and exceptions, and the case is brought to this court by the garnishee defendant on writ of error.

Various errors are urged against the court's rulings on admission and rejection of testimony.    After an examination of that line of assignments we find no error prejudicial to a full consideration of the material questions involved, which appellant's counsel state in their brief as follows:

"The two basic questions in this case are raised by defendant's motion for a directed verdict and its requests to charge numbers 2 and 3.

"From the standpoint of the garnishee defendant they are stated as follows:

"(1) The garnishee defendant was not indebted to

the principal defendant under the policy, and was therefore not liable in garnishment.

"(2) Garnishment will not lie in an action of tort even after judgment."

Upon the argument, appellant's counsel stated that, without waiving other points raised in their brief, he only desired to argue the proposition that their contract of insurance, as set out in the policy, indemnified the principal defendant only against loss or expense, and urged that the latter had proved neither, not having paid the judgment nor made proof of any expense.

Portions of the lengthy policy thought more or less pertinent to consideration of that question are:

"In consideration of the premium and warranties herein provided, the Preferred Automobile Insurance Exchange * * * hereby insures the assured named and described herein, subject to the provisions and conditions herein set forth. * * *

### Section II.

Against loss and expense including the payment of any judgment arising or resulting from claims upon the assured for damages by reason of the ownership, maintenance or use of any automobile enumerated or described in the schedule of statements, on account of:

Injury to Persons—

(1) Bodily injuries or death accidentally suffered or alleged to have been suffered by any person or persons as the result of an accident occurring while this policy is in force; it being understood that the Exchange's liability for such injury * * * shall not exceed * * * ($5,000). * * *

In addition to the above, the Exchange does hereby agree:

Defense of Suit—

(3) To defend in the name and on behalf of the assured any suit brought against such assured to enforce a claim, whether groundless or not, for damage suffered or alleged to have been suffered on account of the bodily injuries or death or the damage to or the destruction of property as set forth in this section; and,

Payment of Costs—

(4) To pay all costs taxed against the assured in any legal proceeding against the assured, defended by the Exchange in accordance with the foregoing agreement; and to pay interest accruing after entry of judgment on that part of said judgment not in excess of the limit of the liability of the Exchange under this section.

This policy is issued by the Exchange, subject to the following conditions, limitations and agreements which are a part of the policy and to which the assured by the acceptance of the policy, agrees:    *    *    *

Exclusions—

(6) This policy does not cover:    *    *    *    while the automobile herein described is being operated by any person under the influence of intoxicating liquors.    *    *    *

Accidents, Claims, Suits—

(7) The assured shall give the Exchange immediate written notice of any accident, claim, loss or suit hereunder with the fullest information obtainable.    *    *    * If as a result of any claim, suit is brought to enforce such claim, the assured shall immediately forward to the Exchange every summons or other process as soon as the same shall have been served; whenever requested by the Exchange, the assured shall aid in effecting settlement, securing information and evidence, the attendance of witnesses and in prosecuting appeals, and at all times render all possible co-operation and assistance; the assured shall not voluntarily assume any liability or interfere in any negotiation for settlement or in any legal proceedings or incur any expense or settle any claim, except at assured's own cost, without the written consent of the Exchange previously given.    The Exchange reserves the right to settle any such claim or suit brought against the assured.    *    *    *

Nonassessable—.

*    *    *    It is understood and agreed that this policy is fully paid and nonassessable and that the policy holder cannot be held liable for any liability of any kind or nature."

Upon the trial appellant urged in defense under the provisions of its policy that Whitaker was intoxicated

at the time of the accident, and that he did not furnish it with the summons or process served upon him at the time plaintiff commenced his action against him, as the policy required. Both of those questions were squarely made issues of fact for determination by the jury and so submitted by the court under proper instructions. The jury's findings against appellant's contention are conclusive upon those issues. We find no error as to that feature of the case.

Upon appellant's contention that garnishment will not lie in an action of tort, even after judgment, its counsel cite *Weimeister* v. *Singer*, 44 Mich. 406, in which it was held transcript of a justice's judgment filed under the statute with the clerk of the circuit court was not a judgment rendered in that court, quoting as follows:

"The amendment in 1879 allowing garnishee process after judgment in the manner pointed out, is merely designed to cover cases in which it could have been issued before judgment. This could not have been done under this statute in proceedings before a justice."

Whatever the intent of that reflection as applied to a transcript of judgment from justice's court, it did not disturb the rule of garnishment recognized in *Hill* v. *Bowman*, 35 Mich. 191, as subsequently made plain by *Detroit Post & Tribune Co.* v. *Reilly*, 46 Mich. 459, wherein it is again held that a judgment on verdict in a tort action is an indebtedness subject to garnishment after entry of judgment, which is the situation presented here. The wording of the statute seems to fairly answer appellant's contention, as follows:

"In all personal actions arising upon contract brought in the several courts or in municipal courts of civil jurisdiction, whether commenced by declaration, writs of capias, summons or attachment, and in all cases where there remains any sum unpaid upon any judgment or decree rendered in any of the several courts hereinbefore mentioned or upon any transcript of a judg-

ment filed in said courts, if the plaintiff, his agent or attorney, shall file with the clerk * * * at any time after rendition of judgment * * * an affidavit * * * a writ of garnishment shall be issued." 3 Comp. Laws 1915, § 13122.

In support of appellant's contention that this policy is a contract of indemnity against damages sustained or actual loss and not against liability, appellant's counsel cite *Stephens* v. *Casualty Co.*, 135 Mich. 189, a case in which the contract of insurance provided "against legal liability of the assured for injury to or death of persons." The case originally involved an action brought by a passenger for personal injuries against a railroad insured by defendant casualty company. The passenger secured a judgment with which the railroad was content, but the casualty company insisted on an appeal, which was taken, and the case subsequently affirmed in this court. Plaintiff Stephens furnished the money to pay the judgment and costs, taking an assignment of the claim against defendant. Garnishment proceedings followed. Subsequently a settlement of all differences was apparently reached except as to Supreme Court costs and some interest, which was further litigated. Stephens recovered a judgment on directed verdict for the amount of costs and interest claimed, and the casualty company appealed. The judgment was affirmed with a modification of the time for which interest should be computed. In the opinion passing upon that controversy it is said of the policy of insurance issued by the casualty company, to which the case harked back, in part as follows:

"We think that, under the terms of this contract, when a final judgment was rendered against the railway company, the liability under defendant's contract became fixed, and it was obligated to pay the amount of the indemnity, although the judgment had not been paid. Under defendant's claim, if the indemnitee were insolvent and never paid the judgment, the in-

demnitor would never be compelled to pay.    *   *   *
The weight of authority seems to be that contracts like
that in this case are held to constitute an indemnity
against liability for damages, and not merely indemnity
against damages.    *   *   *

"The following authorities hold that, under contracts
of like character with the one in this case, a payment
of the judgment is not essential to recovery: *Pickett*
v. *Casualty Co.*, 60 S. C. 477 (38 S. E. 160, 629);
*Fenton* v. *Casualty Co.*, 36 Or. 283 (56 Pac. 1096, 48
L. R. A. 770); *Anoka Lumber Co.* v. *Casualty Co.*, 63
Minn. 286 (65 N. W. 353, 30 L. R. A. 689); *Hoven* v.
*Assurance Corp.*, 93 Wis. 201 (67 N. W. 46, 32 L. R.
A. 388); *McBeth* v. *McIntyre*, 57 Cal. 49."

Although other comments appear in the opinion
touching the subject of indemnity and liability insur-
ance, we are unable to regard that case as confirmatory
of defendant's contention.

Counsel for plaintiff cite, as controlling, *Griffin* v.
*Surety Co.*, 231 Mich. 642, an automobile accident case
closely analogous to this in the nature of the tort and
form of policy held by the tort-feasor.    Defendant's
counsel urge distinguishing provisions in the two
policies, and contend that recovery was only sustained
in the *Griffin Case* on the ground defendant was es-
topped from denial by assuming full control of the
defense, while here defendant took no part in defend-
ing the tort.

It is true that in the *Griffin Case* the court noted
appellant's participation in defense of the tort made
the claim of estoppel appealing, and quoted as appli-
cable language to that effect from *Patterson* v. *Adan*,
119 Minn. 308 (138 N. W. 281, 48 L. R. A. [N. S.]
184), but other authorities and reasons were recognized
throughout the opinion as leading to the result reached,
which tend to support the construction plaintiff con-
tends for here.

In the instant case defendant is expressly obligated
by the terms of its policy "to defend   *   *   *   any

suit brought against  *  *  *  assured  *  *  * whether groundless or not," and authorized to settle any claim or suit without the assured's consent.   It prohibits him from assuming any liability, incurring any expense, or settling any claim without written consent of the insurer, reserving the right to make settlement as it sees fit, in effect forbids the insured from taking any steps towards settlement or incurring any expense at the peril of releasing the insurer from liability, substantially as in the *Griffin Case*.   Under this policy's provisions it can well be argued that the insurer's neglect, or refusal, to defend this action was a palpable breach of its contract of insurance.   A comparison of the two policies in their various provisions discloses a marked similarity.   In the instant case the policy "insures the assured  *  *  *  against loss and expense including the payment of any judgment  *  *  *  on account of:   Injury to persons  *  *  *  liability for such injury  *  *  *  shall not exceed  *  *  *  ($5,000)," while in the *Griffin Case* the insurer agrees "to indemnify the assured  *  *  *  against loss from liability imposed by law  *  *  *  on account of bodily injuries."   Each insurer agrees to defend any suit brought against the assured "whether groundless or not," and each agrees to pay interest accruing after entry of judgment against the assured.

The two are also of the same class in the particular that neither contains any "no action" clause, which has come to be recognized in numerous decisions as the turning point in construing policies found obscured by doubtful or conflicting phraseology, leaving open to argument whether the insurance is for liability or reimbursement, as noted in *Davies* v. *Casualty Co.*, 89 Wash. 571 (154 Pac. 1116, 155 Pac. 1035, L. R. A. 1916D, 395).

A careful review of that question will be found in *Combs* v. *Hunt*, 140 Va. 627 (125 S. E. 661), where

a "no action" clause was involved.   It was there recognized that by the great weight of authority all uncertainties must yield to the plain provisions of the "no action" clause, and the court held that policy must be construed as a reimbursement or indemnity contract.   But shortly thereafter, in *Fentress* v. *Rutledge,* 140 Va. 685 (125 S. E. 668), where a similar policy did not contain a "no action" clause, the distinction is again commented on, and the policy construed by the court as a liability contract.   The two cases, taken together, are illuminating on this perennial subject.

Read in the light of the context, the clause in question is not, as defendant contends, such a plain and unambiguous reimbursement insurance only as to preclude construction or interpretation.   Viewing the contract in its entirety, with its various qualifying provisions, we are persuaded that the clause in question is at least obscured to ambiguity tincturing its provisions as both a contract of indemnity and also a contract to pay liabilities, in which case

"Recovery may be had thereon as soon as the liability attaches to the insured and before it is discharged. The measure of damages is the amount of the accrued liability."   1 Joyce on Insurance (2d Ed.), p. 139.

It is text-book law that technical construction of policies of insurance is not favorably viewed.   Obscure or ambiguous provisions are to be liberally construed.   This policy is appellant's production and is to be most favorably construed in favor of the assured. If it was appellant's purpose to insure against loss actually sustained and not against liability, it could have made it plain by a "no action" clause in unquestionable language familiar to insurance companies and courts.   Why that was not done in this and other similar cases is a matter which has been touched upon in other decisions and need not be discussed here.

Abundant discussion can be found upon the various phases of these questions both in text-books and decisions, some of which have been referred to in the cases already cited. An interesting annotation upon the subject with citation of many cases will be found in the footnotes to *Luger* v. *Windell,* 116 Wash. 375 (199 Pac. 760), as reported in 37 A. L. R. 641. We are of opinion that the construction claimed by appellant in this case cannot be upheld.

The judgment will stand affirmed.

SHARPE, C. J., and BIRD, SNOW, FELLOWS, WIEST, CLARK, and McDONALD, JJ., concurred.