RUTTER v KING

1. ACTION—BARS TO ACTIONS—ALTERNATE REMEDIES—ELECTION OF
REMEDIES.

The mere commencement of an action in a separate forum or
resorting to one remedy is not a bar to commencing a different
form of action where a plaintiff has alternate remedies which
are not inconsistent; there is no election of remedies in such a
case until one of them is pursued to judgment.

2. APPEAL AND ERROR—GARNISHMENT—CLAIMS OF PRINCIPAL DEFEND-
ANT—ASSIGNMENT OF CLAIMS—BANKRUPTCY—MOOTNESS—ELEC-
TION OF REMEDIES—CONFLICTING PRECEDENTS.

An appeal from the grant of summary judgment to a defendant's
insurer in a garnishment proceeding against the insurer is not
rendered moot because the principal defendant is in bank-
ruptcy, and in the separate bankruptcy proceeding the bank-
ruptcy court has assigned the claim of the principal defendant
against the insurer to the plaintiff, where that assignment is
still subject to appeal, where there has been no election of
remedies by the plaintiff, and where the issues involved are of
first impression in Michigan and the law in other states is in
conflict so that an abandonment of the case by the Court of
Appeals could prejudice either party.

3. APPEAL AND ERROR—NEW FACTS—JUDICIAL NOTICE.

The Court of Appeals may properly consider an appeal on the
facts of a case as they stand at the time of its consideration
rather than as the situation stood when ruled on by the trial
court where after the trial court's decision the defendant
executed an assignment of rights to the plaintiff.

REFERENCES FOR POINTS IN HEADNOTES

[1] 1 Am Jur 2d, Actions §§ 86–90.
[2] 4 Am Jur 2d, Appeal and Error § 104.
[3] 4 Am Jur 2d, Appeal and Error § 515.
[4] 1 Am Jur 2d, Actions § 1.
[5, 7, 9–12] 44 Am Jur 2d, Insurance §§ 1533, 1534, 1576.
[6] 6 Am Jur 2d, Attachment and Garnishment §§ 49, 50.
[8] 6 Am Jur 2d, Attachment and Garnishment § 372.
[10] 6 Am Jur 2d, Attachment and Garnishment § 382.

4. ACTION—JUDGMENT CREDITORS—ASSIGNMENTS—DIRECT ACTION—
    INSURERS—REFUSAL TO SETTLE.

A plaintiff judgment creditor possessing a valid assignment of a
defendant insured's cause of action against the insurer has a
right of a direct action against the insurer for alleged wrongful
refusal to settle the claim which gave rise to the judgment.

5. ASSIGNMENTS—INSURANCE—POLICY LIMITS—THIRD PARTY ACTIONS
    —EXCESS JUDGMENT—JUDGMENT CREDITORS—FAILURE OF REM-
    EDY.

A rule which prohibits assignment to a third party of a claim
against an insurer by an insured against whom the third party
has won a judgment in excess of the insurance policy limits
leads to an injustice, particularly where the insured is insol-
vent or nearly so because, if the injured third party may not
pursue his claim without an assignment, if the insured elects
not to assign his claim, if the insured goes into bankruptcy, and
his claim is found unassignable, the third party judgment
creditor is without remedy.

6. GARNISHMENT—TORTS—CONTRACTS—STATUTES—COURT RULE.

Garnishment after judgment is authorized by statute and court
rule to enforce any kind of final money judgment at law,
including a judgment in a tort action (MCLA 600.4011; GCR
1963, 738).

7. INSURANCE—TORTS—CONTRACTS—CLAIMS AGAINST INSURERS—RE-
    FUSAL TO SETTLE—EXCESS JUDGMENT.

A claim of an insured against his insurer, alleging wrongful
refusal to settle a claim brought against the insured by an
injured third party contains elements of both tort and contract;
the obligation of the insurer to protect its insured from an
excess judgment arises out of the contract, and its failure to do
so sounds in tort.

8. GARNISHMENT—TORT CLAIMS—UNLIQUIDATED CLAIMS.

Unliquidated tort claims are not proper subjects of garnishment.

9. GARNISHMENT—INSURANCE—REFUSAL TO SETTLE—BAD FAITH—EX-
    CESS JUDGMENT—TORT CLAIMS—LIQUIDATED CLAIMS.

In a garnishment proceeding to attach the amount due for a
claim based on an excess judgment arising out of an insurer's
alleged bad faith in failing to effect a settlement for its in-
sured's liability, the claim is sufficiently liquidated to permit
garnishment where the amount of damages is ascertainable as
the difference between the insurance policy limits and the
amount of the judgment, and all of the events that would

establish liability have occurred, and the only remaining contingency is the establishment of bad faith.

10. GARNISHMENT—DISPUTED LIABILITY—TRIAL—COURT RULE.

A general court rule contemplates that where a garnishee defendant disclaims liability to the principal defendant, the issue is triable in the garnishment action itself (GCR 1963, 738.1[1][4]).

11. GARNISHMENT—INSURANCE—INSURER'S LIABILITY—POLICY LIMITS —EXCESS OF POLICY LIMITS.

An insurer's liability to a third party judgment creditor of the insured to pay sums in excess of the policy limits is a proper subject of garnishment.

12. GARNISHMENT—INSURANCE—REFUSAL TO SETTLE—BAD FAITH—ACTION—ASSIGNMENTS—THIRD PARTIES.

The issue of whether a garnishee defendant insurer acted in bad faith when he failed to offer settlement on behalf of his insured to a plaintiff in a negligence action may be resolved in the garnishment proceedings brought against the insurer by the judgment creditor who had obtained judgment against the insured and subsequently obtained an assignment of the claim against the insurer from the insured, and it is not required that the judgment creditor who is the assignee of the claim commence a new lawsuit directly against the insurer and secure a judgment on that issue.

Appeal from Mecosta, Harold Van Domelen, J. Submitted Division 3 April 3, 1974, at Grand Rapids. (Docket No. 17881.) Decided December 5, 1974.

Complaint by Richard and Pauline Rutter against George E. King and Mary G. Allison for damages for injuries sustained in an automobile collision. Judgment for plaintiff Pauline Rutter and of no cause of action as to Richard Rutter. Upon partial satisfaction of the judgment by Wolverine Insurance Company and Nationwide Insurance Company, plaintiff filed a writ of garnishment against Wolverine Insurance Company for the amount of the unsatisfied portion of the

judgment. Summary judgment for Wolverine. Plaintiff appeals. Reversed and remanded.

*Anderson, Carr, Street & Hornbach,* for plaintiffs.

*Schmidt, Heaney, Howlett & Van't Hof* (by *Richard L. Spindle* and *Robert D. Kullgren),* for garnishee-defendant Wolverine Insurance Company.

Before: ALLEN, P. J., and T. M. BURNS and R. L. SMITH,* JJ.

ALLEN, J. This case raises the issue of first impression in Michigan of whether a successful judgment creditor plaintiff in a prior suit may proceed directly by garnishment against defendant's insurer for the excess amount of the judgment over and above the policy limits. The trial court held not, and plaintiffs appeal. Subordinate questions of first impression are also included.

In 1972, plaintiff Pauline Rutter received a $30,000 jury verdict for personal injuries sustained when an automobile driven by her husband, Richard Rutter, and in which she was riding as a passenger, was struck by an automobile driven by defendant King and owned by his daughter, defendant Allison. Allison was insured by Wolverine Insurance Company and King was insured by Nationwide Insurance Company. Following judgment, each company contributed $10,000 plus interest to the judgment, the $10,000 being the policy limits and partial satisfaction of judgment was entered.

On November 9, 1972, plaintiffs filed a writ of garnishment followed by a subsequent writ of

---

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

garnishment against Wolverine, claiming that Wolverine owed Pauline Rutter sums over and above the $10,000 theretofore paid and which obligation existed because Wolverine, in bad faith, negligently, wrongfully and in violation of its contract refused to settle the primary case and refused to offer even one dollar towards settlement. Following the partial taking of depositions by plaintiff, Wolverine moved for a summary and/or accelerated judgment under GCR 1963, 117.2(1) and 116.1(3). July 27, 1973, the trial court in a written opinion granted the motion.[1]

Between the date of filing the writs of garnishment and the trial court's opinion, Mary Allison filed a petition in bankruptcy listing as her only creditor the judgment creditor Pauline Rutter. On August 1, 1973, Pauline Rutter appeared asking that the bankruptcy schedule of assets be amended to list as an asset the claim by the bankrupt against Wolverine Insurance Company and further asking that this claim be assigned by the bankruptcy court to Pauline Rutter. The bankrupt's attorney, the same attorney who represented Wolverine in the original action, resisted the petition, advancing as his reasons for objecting, substantially the same arguments made in the case

---

[1] "The garnishment statute, MCLA 600.4011; MSA 27A.4011, GCR 1963, 738.1, and the case law support the contention of the defendant, Wolverine Insurance Company that it is not subject to garnishment under the circumstances of this case. *Murray v Mossman,* 56 Wash 909; 355 P2d 985 (1960); *Paul v Kirkendall,* 6 Utah 2d 256; 311 P2d 376 (1957); *Steen v Aetna Casualty & Surety Co,* 157 Col 99; 401 P2d 254 (1965); *Powell v Prudence Mutual Casualty Co,* 88 Ill App 2d 343; 232 NE2d 155 (1967); *City of Wakefield v Globe Indemnity Co,* 246 Mich 645; 225 NW 643 (1929); *Schueler v Phoenix Assurance Co,* 223 F Supp 643 (ED Mich, 1963).

An unliquidated tort claim is not the subject of garnishment in Michigan. To make such a claim subject to garnishment it must be assumed as a fact that which has yet to be proven and which is denied by the garnishee. *Powell v Prudence Mutual Casualty Co, supra.*"

now pending before us. March 28, 1974, the bankruptcy court entered an opinion and order assigning the cause of action to Pauline Rutter.[2] This assignment became final August 8, 1973 but is subject to appeal.

We first consider the question asked by this Court on oral argument of whether the bankruptcy court's assignment to plaintiff Pauline Rutter rendered the case before this Court moot.[3] Mootness, if any, would come on the theory that the claim against Wolverine having been assigned to plaintiffs could be pressed in a separate forum—either the bankruptcy court or by a separate action filed directly against the insurer in circuit court.

For disparate reasons, the parties to this appeal contend the appeal before us should not be found moot. We agree. Where plaintiff has alternate remedies, which are not inconsistent, the mere commencing of an action in a separate forum or resorting to one remedy is not a bar to commencing a different form of action. In such case there is no election until one of them is pursued to judg-

---

[2] "From the statement of facts in Rutter's brief, it would appear that, although at one time agreeing to pay the sum of Ten Thousand Dollars towards the settlement of Rutter's suit, later Wolverine changed its mind and refused to pay anything, forcing the case to trial. * * *

"The bankrupt has stated in her answer that the chose in action is valueless to her. Consequently, this court has not the duty to make a determination as to whether or not the claim has value. Further, the bankrupt has no standing before this court to resist the trustee's petition to assign the claim.

"The trustee is not bound to accept a burdensome right of action and pursue it to a litigious but unprofitable conclusion. 4A Collier on Bankruptcy, § 70.28, p 379.

"Whether the chose in action has value and validity should be within the purview of the trial court to decide, if suit is commenced."

[3] The matter of the bankruptcy proceedings was first seriously presented to this Court at oral argument, following which the Court asked counsel to submit supplemental briefs on the issue of whether the bankruptcy proceedings made the present case moot.

ment. *Humiston, Keeling & Co v Bridgman,* 195 Mich 82, 86; 161 NW 852 (1917). Plaintiffs have exhibited no indication of following a separate remedy or abandoning this suit. The ruling of the bankruptcy court may be appealed and conceivably reversed since it runs contrary to *Schueler v Phoenix Assurance Co of New York,* 223 F Supp 643 (ED Mich, 1963), a case cited by the circuit judge in support of his granting summary and/or accelerated judgment. Furthermore, no matter what the forum in which, or form of action by which plaintiff elects to proceed, the issues involved are of first impression in Michigan and the law in conflict in other states. Therefore, an abandonment by this Court of the present case could prejudice either party to this appeal.

## I. *The Legal Background*

The law as to an insurer's liability to a judgment creditor of the insured for the insurer's alleged bad faith or negligence in refusing to settle a claim is a recent development and still in a state of change. Almost all jurisdictions allow recovery where suit is brought by the insured himself, providing of course that the insured will be able to sustain the burden of proof as to bad faith or negligence. *City of Wakefield v Globe Indemnity Co,* 246 Mich 645; 225 NW 643 (1929); Anno., *Duty of Liability Insurer to Settle or Compromise,* 40 ALR2d 168; *Riske v Truck Insurance Exchange,* 490 F2d 1079, 1082 (CA 8, 1974). But where the action is brought by the injured third party alone, the courts are split. The majority hold the third party may not recover. This is the ruling, whether the form of action is by a direct third party suit[4]

---

[4] *Duncan v Lumberman's Mutual Casualty Co,* 91 NH 349; 23 A2d 325 (1941); *Wessing v American Indemnity Co,* 127 F Supp 775 (WD

or by garnishment.[5] The reasons given by the courts subscribing to the majority position do not entirely agree but substantially rest on two theories. First, the insurer's liability is personal to its policyholder and should not be extended to a third party stranger having no relationship to the insurance contract. Second, the third party is not injured but in fact is benefited by the insuring company's refusal to settle within the policy limits. The real party injured is the policyholder who because of the insurer's intransigence is left with a judgment hanging over his head. See Keeton, *Liability Insurance and Responsibility for Settlement,* 67 Harv L Rev 1136 (1954). Where suit is by garnishment the courts adhering to the majority rule give as additional reasons for dismissing the action the fact that (a) bad faith or negligence is inherently in tort which, under garnishment law in most states, is not subject to garnishment; (b) the claim is contingent and unliquidated and, accordingly, is not encompassed under garnishment law; (c) champerty is encouraged if a stranger to the insurance contract is permitted to pick up the insured's cause of action without the insured's express consent.

---

Mo, 1955); *Chittick v State Farm Mut Auto Ins Co,* 170 F Supp 276 (D Del, 1958); *Dillingham v Tri-State Ins Co,* 214 Tenn 592; 381 SW2d 914 (1964); *Seguros v Bostrom,* 347 F2d 168 (CA 5, 1965); *Browdy v State-Wide Ins Co,* 56 Misc 2d 610; 289 NYS2d 711 (1968); *Yelm v Country Mutual,* 123 Ill App 2d 401; 259 NE2d 83 (1970); *Biasi v Allstate Ins Co,* 104 NJ Super 155; 249 A2d 18 (1969); *Greer v Mid-West National Fire & Casualty Ins Co,* 305 F Supp 352 (ED Ark, 1969); *Thompson v Commercial Union Ins Co of New York,* 250 So 2d 259 (Fla, 1971); *Linder v Hawkeye-Security Ins Co,* 472 SW2d 412 (Mo, 1971) *app dismissed,* 405 US 950; 92 S Ct 1176; 31 L Ed 2d 227 (1972); *Bennett v Slater,* 289 NE2d 144 (Ind App, 1972).

[5] *Francis v Newton,* 75 Ga App 341; 43 SE2d 282 (1947); *Murray v Mossman,* 56 Wash 2d 909; 355 P2d 985 (1960); *Paul v Kirkendall,* 6 Utah 2d 256; 311 P2d 376 (1957); *Steen v Aetna Casualty & Surety Co,* 157 Colo 99; 401 P2d 254 (1965); *Powell v Prudence Mutual Casualty Co,* 88 Ill App 2d 343; 232 NE2d 155 (1967); *Pringle v Robertson,* 465 P2d 223 (Or, 1970), *reh den,* 483 P2d 814 (Or, 1971).

The minority rule in direct action cases is represented by Florida alone which adopts the rationale that automobile insurance is a third party beneficiary contract extending to the motoring public at large and, accordingly, any third-party injured person may sue without the policyholder's consent. *Thompson v Commercial Union Ins Co of New York,* 250 So 2d 259 (Fla, 1971).[6] In garnishment actions the minority position is represented by three states, each holding that the action rests in contract rather than tort and becomes a liquidated sum certain (the difference between the prior excess judgment and the policy limit) upon entry of judgment in the prior action.[7] The minority also contend that champerty suits will be reduced rather than increased if garnishment is allowed:

"The main public policy reason against the result we reach, as articulated by the trial court and Judges Wright and Montgomery of the Superior Court, is that it will foster fraud and collusion between the insured and the insured claimant. We disagree. As Judge Hoffman so ably reasoned in his dissenting opinion: 'The fears of the lower court are unwarranted. The possibility of collusion between a judgment holder and an insured is no way increased by an assignment. If the insured's liability on the judgment is not affected by the assignment, the interests of the parties are similarly unaffected. Whether the action would be brought in the name of the policyholder or in the name of the assignee, the policyholder would be intent upon relieving himself of the excess judgment and the assignee would be seeking to secure the balance due him. If the in-

[6] *Thompson, supra,* rests heavily on the rationale in the landmark decision of *Shingleton v Bussey,* 223 So 2d 713 (Fla, 1969), which held that the plaintiff may make the insurer a named party to the case and allowed plaintiff to determine the full amount of insurance coverage.

[7] *Smith v Transit Casualty Co,* 281 F Supp 661 (ED Tex, 1968); *Shaw v Botens,* 403 F2d 150 (CA 3, 1968); *Gilley v Farmer,* 207 Kan 536; 485 P2d 1284 (1971).

sured's liability is terminated by the assignment, as in the present case, the possibility of collusion is more remote. Having been relieved of the judgment, the insured no longer has any pecuniary interest in the outcome of the litigation.' *Gray v Nationwide Mutual Ins Co*, 207 Pa Super 1, 10–11; 214 A2d 634, 639 (1965) (Dissenting opinion by Hoffman, J. in which Ervin, P. J. and Watkins, J. joined.)" *Gray v Nationwide Mut Ins Co*, 422 Pa 500, 510–511; 223 A2d 8, 12–13 (1966).

A third and rapidly emerging line of cases is found in which the injured third party does not sue alone but sues both individually and as the assignee of the policyholder. In this situation the courts are again split, with a great majority of jurisdictions favoring recovery. *Brown v Guarantee Ins Co*, 155 Cal App 2d 679; 319 P2d 69 (1957); *Comunale v Traders & General Ins Co*, 50 Cal 2d 654; 328 P2d 198 (1958); *Gray v Nationwide Mut Ins Co*, 422 Pa 500; 223 A2d 8 (1966); 52 Cornell LQ 778 (1967); *General Accident Fire & Life Assur Corp v Little*, 103 Ariz 435; 443 P2d 690 (1968); *Terrell v Western Casualty*, 427 SW2d 825 (Ky, 1968); *Groce v Fidelity General Ins Co*, 252 Or 296; 448 P2d 554 (1968); *Liberty Mutual Ins Co v Davis*, 412 F2d 475 (CA 5, 1969); *McNulty v Nationwide Mut Ins Co*, 221 So 2d 208 (Fla App, 1969); *Brown v State Farm Mutual*, 1 Ill App 3d 47; 272 NE2d 261 (1971). In *Smith v Transit Casualty Co*, 281 F Supp 661 (ED Tex, 1968), a suit in garnishment, the court sustained the assignment from the insured to the injured third party but limited recovery under the then unique and provincial rule which required the injured party to make payment before recovering from the insurer. Only one state squarely rejects an assignment of a cause of action for an insurer's refusal to settle. *Carne v Maryland Casualty Co*, 208 Tenn 403; 346 SW2d 259 (1961); *Dillingham v Tri-State Insurance Co*, 214

Tenn 592; 381 SW2d 914 (1964). No case has been decided in Michigan involving suit by a judgment creditor for excess judgment, whether suing alone or as assignee of the insured.

## II. *Does Plaintiff Have A Remedy?*

In their respective briefs, counsel for each party ask this Court to settle once and for all whether, in this case of first impression, Michigan should follow the majority or minority rule in cases where suit is brought either as a third party action or by garnishment. We find it unnecessary to make this decision. Instead, we believe this case falls within the majority rule in situations where suit is brought by the third party judgment creditor holding an assignment from the insured. We recognize that at the time of the trial court's decision, plaintiff did not hold an assignment and under the majority rule the trial court was correct in its ruling. But upon oral argument when it first appeared an assignment may have occurred, we asked for supplemental briefs which clearly disclosed that an assignment, albeit involuntary, had been ordered and which assignment was final August 8, 1974. Under these circumstances, we may properly consider the appeal on the facts as they now appear rather than as the situation stood when ruled on by the trial court. *McCormick,* Evidence, Judicial Notice § 333, p 773; 9 *Wigmore,* Evidence, § 2567(c), p 536. We adopt the majority rule in the assignment cases listed above and hold that in this case before us plaintiff judgment creditor possessing a valid assignment of the insured's cause of action against the insurer has a right of a direct action against the insurer for alleged wrongful refusal to settle the claim. Whether this direct

action may be by garnishment is a matter to be discussed later in this opinion.

Garnishee-defendant vigorously opposes adoption of the prevailing view in cases where plaintiff holds an assignment on the grounds that in Michigan an assignment of the insured's excess judgment claim is prohibited by *Schueler v Phoenix Assurance Co of New York,* 223 F Supp 643 (ED Mich, 1963) and *City of Wakefield v Globe Indemnity Co,* 246 Mich 645; 225 NW 643 (1929). Federal decisions are persuasive but are not binding on this Court. In this instance we do not find the decision persuasive. Decided early in the then emerging case law on the question of liability for bad faith resulting in an excess judgment, it has not been followed in other jurisdictions and has been strongly criticized:

"In other words, it is suggested that the word 'fraud' as used in the minority opinion did not mean fraud in the traditional sense (deceit), but was rather an unfortunate, but not uncommon, generalization characterizing the conduct of the insurer. Such an explanation is reasonable because in factual situations like those presented in *Schueler* and *Wakefield* the problem is arguably not whether the insurer has falsely represented a fact with the intention of inducing the insured to act or refrain from acting in reliance upon the misrepresentation. Rather it is whether the insurer carelessly or recklessly controls the law suit with resulting injury to the insured.

"That the minority did not intend a fraud test is further supported by the fact that the majority opinion acknowledged the minority had stated the correct rule of law applicable, but conspicuously absent was any mention of or reference to fraud." Note, *Insurance-Insurer's Refusal to Settle Within Policy Limits,* 11 Wayne L Rev 812, 814–815 (1965).

The decision leads to an obvious injustice, particu-

larly where the insured is insolvent or nearly so. If the injured third party may not pursue his claim without an assignment (as is held under the majority rule in both direct action suits and garnishment), if the insured who, having been defended by the insurer, then elects not to assign his claim, if then the insured goes into bankruptcy, and if under *Schueler* the claim is found unassignable, the third party judgment creditor is without remedy. The insured is relieved of the obligation and may not be used by the third party, and the insurer is no longer under the threat of suit by the policyholder. Evidence of the cozy relationship between insured-debtor and its insurer appears in the instant case where the petition in bankruptcy was filed by the same counsel who defended garnishee-defendant in the original action. Following the decision by Pennsylvania in *Gray v Nationwide Mutual Ins Co, supra,* its underlying policy considerations were reviewed in Note, *Insurer's Liability to Judgment Creditor of Insured For Wrongful Refusal to Settle a Claim,* 52 Cornell LQ 778 (1967). The author concluded, saying:

"The California and now Pennsylvania position is that which is most consistent with modern assignment law and contemporary goals of society. The natural interpretation of insured's cause of action is that it is either in contract arising from breach of implied terms of the insurance policy, or in tort for non-personal injuries. Both types of action are assignable under the statutes and case law of most states. Furthermore, assignability is desirable because it decreases the likelihood of collusion, discourages wrongful action by insurers, benefits injured claimants by spreading their losses, and decreases litigation." 52 Cornell LQ 778, 789.

Nor do we agree that *City of Wakefield v Globe Indemnity Co, supra,* prohibits assignment. In that

case, suit was brought by the policyholder himself against the insurer, and assignability was not discussed. However, garnishee-defendant argues that even though assignability was not directly ruled upon it was nonetheless barred by implication because the court stated the cause of action lay in fraud. Counsel then pointed out that *Jones v Hicks,* 358 Mich 474; 100 NW2d 243 (1960), and *Bentley v Farmers Ins Exchange,* 289 F2d 59 (CA 6, 1961), hold a fraud claim is not assignable in Michigan.[8] We find that the majority of the court spoke only in terms of "bad faith", stating:

> "The rule of law applicable to the issue here presented is, I think, correctly stated by Mr. Justice FEAD as follows:
> " 'It is not bad faith if counsel for the insurer refuse settlement under the *bona fide* belief that they might defeat the action, or, in any event, can probably keep the verdict within the policy limit. * * * A mistake of judgment is not bad faith.' " *City of Wakefield, supra,* 246 Mich 645, 656.

We also find that legal annotations basically refer to *Wakefield* as a "bad faith" case rather than a fraud case. See 40 ALR 2d 168, 171. Again we refer to Note, 11 Wayne L Rev 812, 815–816 (1965):

> "What apparently has happened in *Schueler* is that the Sixth Circuit has seized upon and given literal meaning to some unfortunate language of a minority [in Wakefield] of the Michigan Supreme Court. The result is that it has given a rather questionable interpretation to *Wakefield* and by so doing has taken the action out of the broad category of tort actions which are generally assignable and turned it into an action

---

[8] But see *Mason v Vogue Knitting Corp,* 365 Mich 552; 114 NW2d 154 (1962), which casts some doubt on this statement. Referring to *Jones v Hicks, supra,* the Court said that case only denied assignment of a right of election of remedy of whether to sue in fraud or seek to recover the property.

based upon fraud, which is non-assignable. Problems thereby are created which can be resolved only in future cases."

We conclude, therefore, that the bankrupt Allison's claim against her insurer was properly assignable and that plaintiff, armed with the assignment may proceed in a direct action against the insurer.

### III. *Is Garnishment Permissible?*

The door to garnishment does not necessarily open merely because the insured's claim is assignable and the way cleared for a direct action suit. As we noted earlier, this precise issue of garnishment has resulted in diverse decisions in other jurisdictions.[9] Much depends on the particular provisions of the several states' garnishment statutes. For example, Florida, which in its liberal decision in *Thompson v Commercial Union Insurance Co of New York, supra,* held the third party might sue *without an assignment,* later ruled when the same case came back on garnishment that garnishment would not lie. The reason given was that the Florida statute required a prior judgment determining the insurer's liability to the insured before a writ of garnishment would issue. *Thompson v Commercial Union Ins Co of New York,* 267 So 2d 18 (Fla App, 1972).[10]

Cases denying garnishment as a proper remedy do so because the action is found to be bottomed on tort and because the claim is unliquidated.

[9] See citations listed in footnotes 5 and 7, *supra.*

[10] The first *Thompson* case was decided by the Florida Supreme Court which reversed an opinion of the Florida 1st District Court of Appeal. The second *Thompson* case is a decision by the same 1st District Court of Appeal. Certiorari was denied thereon by the Supreme Court in a 4–3 determination.

Jurisdictions allowing garnishment hold that the cause of action lies in contract or in both tort and contract. Fortunately, this distinction between tort and contract, so important on the issue of assignability discussed earlier, is in itself immaterial under the Michigan statute. MCLA 600.4011; MSA 27A.4011, provides that with certain exceptions not pertinent to the instant case:

"[T]he circuit courts of the state shall have power by garnishment to apply to the satisfaction of a claim evidenced by * * * judgment of this state * * * .

"(a) personal property belonging to the person against whom the claim is asserted but which is in the possession or control of a third person if the third person is subject to the judicial jurisdiction of the state and the personal property to be applied is within the boundaries of this state;

"(b) *an obligation owed* to the person against whom the claim is asserted if the obligor is subject to the judicial jurisdiction of the state; whether or not the state has jurisdiction over the person against whom the claim is asserted." (Emphasis supplied.)

This statute has been implemented by GCR 1963, 738. 4 Honigman & Hawkins, Michigan Court Rules Annotated, Author's Comments, p 607, states: "Garnishment after judgment is authorized to enforce any kind of final money judgment at law, including a judgment in a tort action". Garnishment of an insurance company following judgment against its insured by the injured third party was sustained despite defendant's claim that garnishment would not lie because the judgment was based in tort. *Barney v Preferred Auto Insurance Exchange,* 240 Mich 199; 215 NW 372 (1927).

The tort-contract nature of the insured's claim for excess judgment was never addressed *by the majority.* In *City of Wakefield v Globe Indemnity*

*Co, supra,* Justice FEAD, speaking for the minority, made the distinction and thus the issue has not been determined in Michigan. In the 45 years which have elapsed since *Wakefield,* the law has advanced with many decisions directed to the distinction.

In *Meirthew v Last,* 376 Mich 33; 135 NW2d 353 (1965), the injured third party who had recovered a judgment against the insured brought garnishment against the insurer for sums due within the policy limits. In its decision the Court had occasion to discuss the relationship between the insured and his insurer and the nature of any breach thereof. Specifically, the Court found that the insurer's duty and any breach thereof contained elements both of contract and bad faith.

"We hold the notice legally insufficient; also that it came too late to avoid presumptive prejudice of Last's rights and plaintiff's consequential rights. The notice was vague and uncertain. It smacks of bad faith for want of specific reference to that clause of the policy the garnishee has pleaded. In no field of law is legal duty more rigidly enforced than in instances as at bar. *The insurer must fulfill its policy-contracted obligation with utmost loyalty to its insured;* not for the purpose of developing, secretly or otherwise, a policy of defense." (Emphasis supplied.) 376 Mich 38.

Having the benefit of subsequent decisions we conclude that the insured's claim sounds both in tort and contract. The obligation of the insurer to protect its insured from an excess judgment arises out of the contract, and its failure to do so sounds in tort. We agree with the reasoning in *Gilley v Farmer, supra,* fn 7, where the court, likening the situation to a contractor's breach, said:

"Where negligence on the part of the contractor results in a breach of the implied warranty, the breach

may be tortious in origin, but it also gives rise to a cause of action *ex contractu.* An action in tort may likewise be available to the contractee and he may proceed against the contractor either in tort or in contract; or he may proceed on both theories. However, his petition need not state whether his action is based upon implied contract or tort." (Citations omitted.) 207 Kan 536, 542; 485 P2d 1284, 1289.

Our determination that plaintiff's claim has elements of both tort and contract thus snugs within the "obligation owing" language of the garnishment statute above cited and is compatible with decisions of the Michigan Supreme Court which, when confronted with subtle distinctions between causes of action, has found redress to lie both in tort and contract. *Kristoffy v Iwanski,* 255 Mich 25; 237 NW 33 (1931); *Williams v Polgar,* 391 Mich 6; 215 NW2d 149 (1974).

Garnishee defendant argues that garnishment is prohibited because the claim is unliquidated. Unliquidated tort claims are not proper subjects of garnishment. 38 CJS Garnishment, § 91, p 296; *Detroit Post & Tribune Co v Reilly,* 46 Mich 459; 9 NW 492 (1881). The question of whether an excess judgment claim arising out of an insurer's alleged bad faith is unliquidated or not has never been addressed in Michigan. On this issue, we perceive that the claim is sufficiently liquidated. In *Talbert v Solventol Chemical Products, Inc,* 304 Mich 557; 8 NW2d 637 (1943), garnishment was allowed in a claim for commissions due plaintiff for sales of its metal cleaning compound, even though the sales were to be developed by plaintiff and payment was to continue for the life of the business. The Court held that it was sufficient if, in the light of the terms of the contract, damages were susceptible to definite ascertainment by testimony. In the instant case, damages of $10,000 are ascertainable in the

light of the insurance contract and the judgment of $30,000. Liability, if any, is the amount of the judgment in excess of the policy limits. As was stated in *Shaw v Botens, supra,* fn 7:

"The claim became definite and liquidated by the refusal of the insurer to settle prior to the entry of the June 30, 1966, judgment and the entry of that judgment in a definite amount, provided that plaintiff can establish its allegations that such insurer-garnishee failed 'to act in good faith in the defense and settlement of the primary action.'" 403 F2d 150, 154.

The most substantive objection to garnishment goes to the contingency of plaintiff's claim. 38 CJS, Garnishment § 87, p 291, discussing this problem, says:

"[G]enerally * * * a debt which is uncertain and contingent, in the sense that it may never become due and payable, is not subject to garnishment."

The claim is contingent in the sense that until plaintiff establishes bad faith it will never become due and payable. On the other hand, all the events that would establish liability have occurred and the only remaining contingency is the establishment of bad faith. The Court, in *Allstate Ins Co v Morrison,* 146 Ind App 497; 256 NE2d 918, 926–927 (1970) said:

"In the present case it is said the claim is contingent because the casualty company denies that it is liable to Zimek under the terms of the policy of insurance. But defendant misconceives the nature of the contingency contemplated by the rule. A contingent claim is one where liability hinges upon some future event, which may or may not occur; it is dependent upon some condition as yet unperformed. (Citation omitted.) Here, whatever right [plaintiff] has against the company has

vested: all the events which can fix the garnishee with liability have taken place.

\* \* \*

"When the garnishee denies liability, one of the objects of the garnishment suit is to ascertain whether there is a debt due from the garnishee to the judgment debtor. (Citation omitted.) Thus, the denial of liability by the garnishee does not create a contingency which will prevent garnishment. If we held otherwise, garnishment process by a creditor could be defeated in every case by the garnishee's denial of indebtedness to the judgment debtor."

The nub of the issue boils down to this—must the plaintiff first establish in a separate action the alleged bad faith of the insurer or may this issue be litigated in the garnishment action now pending? GCR 1963, 738.11(1)(4), contemplates that where the garnishee defendant (Wolverine) disclaims liability to the principal defendant (Allison) the issue is triable in the garnishment action itself. This issue does not differ in form from the routine issue in the garnishment of wages or garnishment of an insurance policy covenant to pay damages. The insurer's liability to a third party judgment creditor to pay sums *within* the policy limits is a proper subject of garnishment. 18 Couch, Insurance, § 74.96; *Barney v Preferred Auto Insurance Exchange, supra; Meirthew v Last, supra.* The fact that the present garnishment is to recover sums in excess of the policy should make no difference in the availability of the remedy. The difference is one of degree rather than form. GCR 1963, 110.3 provides:

"Technical Forms Abolished. All common counts, general issues, demurrers, pleas, fictions and technical forms of action or pleading, are abolished. The form and sufficiency of all motions and pleadings shall be determined by these rules, construed and enforced to secure

a just, speedy, and inexpensive determination of all controversies on their merits."

The single issue which would be involved in a direct action suit—did garnishee defendant in fact exercise bad faith—is the identical unresolved issue which will be litigated to conclusion in the garnishment proceedings. In fact, some testimony on this issue has already been taken. It does not make good sense to force the judgment creditor to take a second step—commence a new lawsuit and secure a judgment against the defendant insurer—when the identical issue may be resolved in the pending garnishment action and particularly when the court rules have established the machinery to resolve the issue. To require this two-step process would be incompatible with GCR 1963, 110.3. Accordingly, we reverse and remand the case to the trial court to proceed with taking testimony in the garnishment action now pending.

Although we reverse, we again point out that we do so with benefit of facts not available to the trial court at the time it acted on the motion. Because the main issue involved is of major importance to the insurance-negligence practice of law, and because so many splits of authority exist both on and within it, the issue commends itself for review by the Supreme Court, the final judicial authority on public policies of this state.

Reversed and remanded to proceed in accordance with this opinion, costs to plaintiffs.

All concurred.