*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

DARNELL HAIRSTON,

        Plaintiff/Garnishee Plaintiff-
Appellant,

v

JOSH LKU, ZEELAND FARM SERVICES, INC.,
ZEELAND FARM SOYA, INC., and ZFS
LICENSING, INC.,

        Defendants,

and

SPECIALTY INDUSTRIES, INC.,

        Defendant-Appellant,

and

BURLINGTON INSURANCE CO.,

        Garnishee Defendant-Appellee,

and

EVANSTON INSURANCE CO.,

        Garnishee Defendant.

FOR PUBLICATION
November 21, 2023
9:25 a.m.

No. 363030
Ottawa Circuit Court
LC No. 17-004993-NO

Before: RICK, P.J., and SHAPIRO and YATES, JJ.

RICK, P.J.

Plaintiff Darnell Hairston was seriously injured in a work accident that left him permanently disfigured. This appeal arises from his attempts to collect on a judgment in his favor of approximately $13.5 million against defendant, Specialty Industries, Inc. (Specialty Industries).

-1-

Specialty Industries is insured by garnishee defendants Burlington Insurance Company (Burlington) and Evanston Insurance Company (Evanston). Burlington and Evanston paid approximately $9.7 million of the judgment under the terms of their respective insurance agreements with Specialty Industries. Hairston sought to collect the remaining balance on the judgment from Burlington and Evanston after Specialty Industries assigned its right to pursue legal action against them to Hairston. Hairston and Specialty Industries now appeal as of right a trial court order dismissing their writs of garnishment against the insurers. We affirm in part and reverse in part.

## I. FACTUAL BACKGROUND

In October 2016, plaintiff suffered horrendous injuries at his workplace, a soybean processing facility in Ottawa County, Michigan. In June 2017, Hairston sued defendants Zeeland Farm Services, Inc., and Zeeland Farm Soya, Inc. (collectively Zeeland Farms), as well as an employee of Zeeland Farms, Josh LKU. We note that when the lawsuit was filed, Hairston did not know the last name of the employee referred to as "Josh LKU," and used LKU as a shorthand reference to "last name unknown." It was later disclosed that the employee's name is Josh Woldring. More than a year later, in October 2018, Hairston amended his complaint to add Specialty Industries as a defendant, alleging that Specialty Industries negligently designed and built the soybean processing facility.

The trial court summarized the events leading to Hairston's injury as follows:

[D]efendant [Zeeland Farms] is in the business of processing soybeans from a raw state in to various products . . . . [Zeeland Farms] and defendant Specialty Industries, Inc. designed and constructed [Zeeland Farms]'s original soybean processing plant in the late 1990's [sic] in which raw soybeans are processed by first being pulverized by a hammermill, then moved through a rotating airlock (similar to a revolving supermarket door), and dropped down through a rectangular transfer area into a chute where a conveyer transports the soybean meal to storage bins. Due to the difficulty of restarting the processes, the machinery operates continuously, 24 hours a day and 365 days a year with the exception of two maintenance periods per year, and there is no emergency shut off in the area in which Hairston's injury occurred.

* * *

Plaintiff Hairston, 45 years old, stated in his deposition that he began work as a plant operator at [Zeeland Farms] on September 12, 2016. He stated he had a half-day orientation, then 15 minutes of training each day for the next two days. He met team leader Woldring on the third day of employment, and Woldring showed him how to obtain a hull sample by inserting a cup through the Knappco viewing door and catching hulls as they flowed down through the transfer area. Woldring told Hairston he took samples with his bare hand, but that Hairston could use a cup if that would make him more comfortable, and Hairston took a sample with the cup, saying "that's easy," and they moved on to other things. Hairston avers that Woldring did not tell him about the presence of the airlock or auger, or

-2-

warn him not to raise or lower his hand. Hairston did not know what an airlock or auger was and had no knowledge of the existence of either, or any moving parts, near the area where he inserted his hand and the cup, but thought the soy hulls were moved through the machine by air pressure because he had observed air pressure used in other areas of the plant in which he was told to insert his hand into machinery.

Woldring stated in his deposition that the noise near the hammermill made conversation very difficult. He believed, but did not distinctly remember, telling Hairston that there was an auger below his hand. He believed, but was not 100 percent sure that at the time he demonstrated taking a hull sample for Hairston he told Hairston there was a rotating airlock above his hand. Woldring thought Hairston understood there was an auger below his hand, but stated he "obviously never made it clear enough . . . ." Woldring stated he told Hairston to put the cup in and pull it straight out. Hairston seemed to Woldring to have a very good grasp of how everything worked. Woldring stated in his deposition that he was not even aware of the sampling port, and that when he was trained to take a hull sample through the viewing port he was not specifically informed of the auger, but had thought its presence was obvious. He stated he incorrectly assumed Hairston had the same understanding.

Hairston described in his deposition that on October 6, 2016 he took a hull sample using a cup, and it slipped from his hand. When he instinctively reached down his fingers caught in the auger and it pinched them, held them fast, and slowly began dragging his hand and forearm into the machine. He was able to tear out his mangled appendage by climbing onto the machine with two feet and pulling hard. His injuries necessitated amputating what remained of his right hand and forearm. He received and continues to receive worker's disability compensation benefits. [Footnotes omitted.]

In December 2019, Zeeland Farms and Hairston both accepted a case evaluation award, and the trial court entered a stipulated order dismissing the claims against all the Zeeland Farms defendants. Specialty Industries rejected the case evaluation and refused an offer from Hairston to settle for $1.5 million. The trial court held a jury trial over seven days in October 2021. The jury returned a verdict in Hairston's favor. It found that Specialty Industries had been grossly negligent in its design of the processing machinery and that its gross negligence was the proximate cause of Hairston's injuries. The jury assigned 20% fault to nonparty Zeeland Farms and 80% liability to Specialty Industries. The trial court adjusted the total damages found by the jury to its present value and entered a judgment against Specialty Industries for $13,489,447.04. It also entered an order compelling Specialty Industries to pay $240,451.02 in costs and reasonable attorney fees as a case evaluation sanction under MCR 2.403(O). These sums substantially exceeded the available insurance coverage.

The trial court entered a stipulated partial satisfaction of judgment in January 2022. Hairston stipulated that Burlington had insured Specialty Industries on a policy with a $1-million limit. He agreed that Evanston insured Specialty Industries under an umbrella policy with a $8-

million limit. After making certain adjustments required under their contracts, Burlington and Evanston paid $1,108,416.47 and $8,640,736.94 to Hairston, respectively.

In February 2022, Hairston and Specialty Industries moved for permission to conduct proceedings supplemental to judgment under MCR 2.621 and MCL 600.6101. Hairston and Specialty Industries stated that they entered into an agreement under which Specialty Industries agreed to pay $1 million to Hairston and assign him its claims against its insurers or choses in action[1] that it might have against Burlington and Evanston to Hairston. In exchange, Hairston agreed that he would not attempt to collect the remaining balance directly from Specialty, but instead would seek to collect the balance from Burlington and Evanston based on Specialty's assignment of its rights. Specifically, Hairston, acting as assignee of Specialty Industries asserted that Burlington and Evanston had in bad faith refused to settle the lawsuit and were, for that reason, liable for the balance of the judgment. They further argued that that liability amounted to an asset assigned to Hairston, which could be the subject of supplemental proceedings. Evidence was presented indicating that Burlington and Evanston rejected an earlier offer from Hairston to settle for $1.5 million, which was well within the available limits.

On March 3, 2022, Burlington and Evanston filed an action in federal court asking for declaratory relief. Evanston and Burlington specifically sought a declaration that they fulfilled their duties in good faith and asked the federal court to absolve them of any further obligations with regard to the judgment. On March 4, 2022, Burlington and Evanston filed a brief in opposition to Hairston's motion for supplemental proceedings. They argued that Hairston could not use supplemental proceedings to litigate a claim alleging a bad-faith refusal to settle. Rather, they argued, Hairston needed to file writs of garnishment because the writs would serve as a complaint and, after that, Hairston could be entitled to discovery. They also noted that the federal suit precluded the trial court from exercising jurisdiction over the supplemental proceedings.

Hairston and Specialty Industries responded that Burlington and Evanston did hold an asset that—at least equitably—belonged to Specialty Industries: namely, the obligation to pay the excess judgment because Burlington and Evanston refused to settle the case within the policy limits in bad faith. They maintained that because Burlington and Evanston held an asset that belonged to Specialty Industries, they could be required to provide discovery in supplemental proceedings. They also did not agree that the federal case precluded the trial court from exercising jurisdiction over supplemental proceedings. Instead, they asserted that Evanston and Burlington were continuing to act in bad faith by filing the claim for a declaratory judgment in federal court rather

---

[1] Black's Law Dictionary (11th ed. 2019) defines the term "chose in action" as "1. A proprietary right in personam, such as a debt owed by another person, a share in a joint-stock company, or a claim for damages in tort. 2. The right to bring an action to recover a debt, money, or thing. 3. Personal property that one person owns but another person possesses, the owner being able to regain possession through a lawsuit."

than in the state court that had tried the underlying tort case and was well-familiar with the relevant evidence.

The trial court heard argument on the matter of supplemental proceedings that same month. It determined that the request for supplemental proceedings was improper. The court explained that there were questions of fact as to whether Burlington and Evanston acted in bad faith and whether Specialty Industries had the authority to assign its claims against Burlington and Evanston. The court further noted that supplemental proceedings were intended to get at the assets of the judgment debtor, not at third parties. The court averred that the federal court was the proper forum or, in the alternative, Hairston and Specialty Industries could sue for a breach of contract or ask for declaratory relief in a different court of competent jurisdiction. The court therefore denied the request for supplemental proceedings to conduct discovery against Burlington and Evanston and ordered that all postjudgment subpoenas were void and unenforceable.

After the hearing, Hairston served writs of garnishment on Burlington and Evanston for the unpaid balance of the judgment, which was at that point over $4 million, including accrued interest. Burlington and Evanston each moved to quash and dismiss the writs of garnishment under MCR 2.116(C)(6) (another action involving the same parties and claim) and (C)(8) (failure to state a claim). They argued that Specialty Industries' bad faith claim against its insurers did not provide a basis for garnishment because it had not yet been litigated and reduced to judgment. They also argued that Hairston and Specialty Industries ignored the trial court's earlier order denying supplemental proceedings. Additionally, they asked the trial court to dismiss the writs of garnishment under MCR 2.116(C)(6), arguing that Hairston and Specialty Industries were obligated to pursue their claims in federal court.

Hairston and Specialty Industries opposed the motion. They maintained that in Michigan, an insurer is liable for a judgment in excess of policy limits if the insurer refused to settle the claim within the policy limits and did so in bad faith. The only dispute, they submitted, was whether Burlington and Evanston acted in bad faith. They contended that such questions could be litigated in an action on a writ of garnishment as stated by this Court in *Rutter v King*, 57 Mich App 152; 226 NW2d 79 (1974). They further argued that they had a right to pursue the action in state court regardless of the fact that Burlington and Evanston had pursued a declaratory judgment in federal court.

The trial court ultimately entered an order granting the motions to quash and dismiss the writs of garnishment. The court reasoned that, under MCR 3.101(G)(1)(g), a writ is not proper unless there is a judgment in force when the writ issued. It concluded that the writs were improper because Hairston had not reduced its bad faith claim to settle to judgment before it issued the writs. The court rejected the contention that *Rutter* applied because that case had been decided before the promulgation of the current court rules regarding garnishment. The trial court acknowledged that Burlington and Evanston had asked for the writs to be dismissed under MCR 2.116(C)(6), but elected not to address that claim because it dismissed the writs under MCR 2.116(C)(8) instead. The court also determined that sanctions were appropriate under MCR 1.109(E) because Hairston and Specialty Industries had not followed the court's previous order denying supplemental proceedings and so had filed the writs to harass or needlessly increase the litigation.

Hairston and Specialty Industries moved for reconsideration, which was denied by the trial court. This appeal followed.

## II. ANALYSIS

### A. GARNISHMENT

Hairston and Specialty Industries argue that the trial court abused its discretion when it granted the motions to quash the writs on the ground that a dispute over a bad-faith refusal to settle could not be litigated in a writ of garnishment. We agree.

This Court reviews a trial court's decision to quash a writ of garnishment for an abuse of discretion. *Sys Soft Technologies, LLC v Artemis Technologies, Inc*, 301 Mich App 642, 650; 837 NW2d 449 (2013). A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes. *Slis v Michigan*, 332 Mich App 312, 335; 956 NW2d 569 (2020). Additionally, a trial court necessarily abuses its discretion when it premises its decision on an error of law. See *Gay v Select Specialty Hosp*, 295 Mich App 284, 292; 813 NW2d 354 (2012). This Court reviews de novo whether the trial court properly interpreted and applied the relevant statutes and court rules. See *Brecht v Hendry*, 297 Mich App 732, 736; 825 NW2d 110 (2012). To the extent that the trial court dismissed the writs for failure to state a claim, this Court reviews de novo a trial court's decision on a motion for summary disposition. *Adams v Parole Bd*, 340 Mich App 251, 258; 985 NW2d 881 (2022).

On appeal, Hairston and Specialty Industries argue that the trial court erred when it distinguished this Court's decision in *Rutter* and determined that they could not litigate the claim of bad-faith refusal to settle in a garnishment proceeding. More specifically, they argue that the trial court was bound by the decision in *Rutter* because it was published and there had not been any intervening change in the law that warranted disregarding the decision.

We hold that *Rutter* is controlling. In *Rutter*, 57 Mich App 152, the garnishee plaintiffs filed a writ of garnishment against the insurer of the judgment debtor against whom they held a partially paid judgment. The insurer had paid its policy limits to the garnishee plaintiffs, but the garnishee plaintiffs argued that the insurer was liable for the excess judgment because it refused to settle in bad faith. *Id*. at 155-156. The insurer moved for accelerated judgment in the action on the writ and the trial court dismissed the action because it determined that a claim of bad-faith refusal to settle had to be reduced to judgment before it could be subject to garnishment. *Id*. at 156, 156 n 1. Eventually, a bankruptcy court assigned the judgment debtor's claim against her insurer to the garnishee plaintiff. *Id*. at 156-157. The Court ultimately held that "[a] plaintiff judgment creditor possessing a valid assignment of the insured's cause of action against the insurer has a right of a direct action against the insurer for alleged wrongful refusal to settle the claim." *Id*. at 162. It further concluded that whether a garnishee defendant acted in bad faith may be "litigated to conclusion in the garnishment proceedings." *Id*. at 172.

In this case, the trial court explained that it did not believe *Rutter* controlled the matter at hand because *Rutter* was issued before the enactment of MCR 3.101, which governs garnishment proceedings. Quoting *Westland Park Apartments v Ricco, Inc*, 77 Mich App 101, 104 n 1; 258 NW2d 62 (1977), the court also noted that "[g]arnishment proceedings are entirely creatures of

statute and are to be strictly construed." It reasoned that Michigan's courts had not relied on *Rutter* since the enactment of MCR 3.101. While understandable, this was erroneous. A published opinion of this Court, even one decided before November 1, 1990, binds lower courts and tribunals under the rule of stare decisis. MCR 7.215(C)(2); *Catalina Mktg Sales Corp v Dep't of Treasury*, 470 Mich 13, 23; 678 NW2d 619 (2004).[2] For that reason alone, the trial court should not have disregarded this Court's decision in *Rutter*. See, e.g., *People v Mitchell*, 428 Mich 364, 369-370; 408 NW2d 798 (1987). This Court in *Rutter* decided as a point of law that a garnishee plaintiff who had been assigned a claim of bad-faith refusal to settle could litigate whether an insurer was liable for an excess judgment in a garnishment proceeding. Accordingly, that point of law was a matter of stare decisis. See *Dana Corp v Dep't of Treasury*, 267 Mich App 690, 698; 706 NW2d 204 (2005).

The trial court relied heavily on the fact that this Court decided *Rutter* before the promulgation of the current court rules. However, the court overlooked that the General Court Rules of 1963 were in effect when this Court decided *Rutter*, and contained provisions for handling garnishment proceedings that were materially the same as the modern provisions set forth in the Michigan Court Rules, including MCR 3.101. Garnishment proceedings were previously governed by GCR 1963, 738. Under that rule, a judgment creditor could request a writ of garnishment by filing an affidavit asserting that the garnishee defendant held property belonging to the judgment debtor or was indebted to the judgment debtor. See GCR 1963, 738.2. The same is true under the current rule, except that the party requesting the writ must submit a verified statement rather than an affidavit. See MCR 3.101(D)(3). Like the current rules, the former rules listed the types of property and debts that could be the subject of a writ of garnishment. Compare MCR 3.101(G)(1)(d) (stating that a garnishee is liable for "all debts, whether or not due, owing by the garnishee [defendant] to the [judgment debtor] when the writ is served on the garnishee [defendant]") with GCR 1963, 738.5(5) (stating that the garnishee defendant "may be held liable to the [judgment creditor] in the amount of . . . all debts owing by the garnishee [defendant] to the principal defendant [i.e. the judgment debtor] at the time of the service of the writ upon the garnishee [defendant] whether or not they are due."). If the garnishee defendant denies liability or denies that he or she holds property belonging to the judgment debtor, the former court rules—like the present court rules—provided that the dispute could be litigated in the garnishment proceedings like any other civil action. Compare GCR 1963, 738.11 with MCR 3.101(M).

The trial court appears to have relied on the fact that the current court rules provide that a judgment is not a proper subject of a writ of garnishment unless the judgment was "in force when the writ is served on the garnishee [defendant]." MCR 3.101(G)(1)(g). An identical provision was part of the General Court Rules when this Court decided *Rutter*. See GCR 1963, 738.5(6) (stating that "judgments in favor of the principal defendant against the garnishee" could be

---

[2] Indeed, even though the decision in Rutter was published before November 1, 1990, and so is not binding on this Court, see MCR 7.215(J)(1), this Court must still give significant deference to the decision. See *Woodring v Phoenix Ins Co*, 325 Mich App 108, 114-115; 923 NW2d 607 (2018).

subjected to a writ of garnishment if "in force at the time of the service of the writ upon the garnishee").

Additionally, although the Court in *Rutter* did not directly cite GCR 1963, 738.5(6) when analyzing the propriety of the use of a writ of garnishment to litigate a claim for bad-faith refusal to settle, it impliedly rejected the contention that that rule precluded application of the writ to such a claim. This Court noted that the garnishee defendant in *Rutter* argued that garnishment should not apply because the case sounded in tort and was unliquidated. See *Rutter*, 57 Mich App at 166. This Court disagreed, and explained that a claim for bad-faith refusal to settle sounded in both tort *and contract*. *Id*. at 168. For that reason, the Court held, it constituted an obligation owing within the meaning of MCL 600.4011(1)(b). See *id*. at 167-169. This Court then addressed whether the claim was unliquidated, and agreed that a tort claim must ordinarily be reduced to judgment before it could be the subject of a writ of garnishment. *Id*. at 169. Despite that, this Court held that a claim for bad-faith refusal was sufficiently liquidated once the underlying judgment entered against the insured to permit the obligation to be the subject of a writ of garnishment. *Id*. at 169-171. By recognizing that a judgment must ordinarily have been entered before it can be the subject of a writ of garnishment, and then proceeding to hold that the debt at issue was sufficiently liquidated to be the subject of a writ of garnishment, this Court in effect held that a claim for bad-faith refusal to settle does not constitute an unliquidated tort claim subject to GCR 1963, 738.5(6). Instead, it constituted a debt owing subject to GCR 1963, 738.5(4).

The trial court also concluded that this Court's more recent decisions undermined the holding in *Rutter*. We disagree. None of the authorities cited by the trial court involved whether a judgment creditor who had been assigned the judgment debtor's claim for bad-faith refusal to settle in the underlying case could litigate the insurer's bad faith in a garnishment proceeding. By way of example, the trial court cited this Court's decision in *Nationsbanc Mtg Corp of Georgia v Luptak*, 243 Mich App 560; 625 NW2d 385 (2000), for the proposition that a claim of bad-faith refusal to settle had to be judicially determined before it could be subject to a writ of garnishment. However, this Court held that the Supreme Court's reference to "void" conveyances, as stated in MCR 3.101(G)(1)(h), demonstrated that the real property at issue could only be the subject of a garnishment if there had already been a judicial determination voiding the conveyance. Because this Court's holding was limited to the proper interpretation of MCR 3.101(G)(1)(h), which is the successor to GCR 1963, 738.5(7), it cannot be understood to reject this Court's holding in *Rutter*, which involved different provisions of the court rules.

We likewise find it unavailing to distinguish the facts in *Rutter* from the facts of this case. The trial court explained that, "unlike *Rutter*, there are multiple issues to be decided in addition to the bad-faith claim including if the matter was properly assigned to plaintiff and which, if any, of the garnishees are liable and for how much." We are not convinced that the distinction matters. In *Rutter*, this Court determined that a garnishee plaintiff could litigate an assigned claim for bad-faith refusal to settle in a garnishment proceeding because such a claim was sufficiently liquidated to constitute a debt owed rather than a tort claim that must be reduced to judgment. That was the same issue before the trial court in this case. The additional issues identified do not implicate that holding.

Whether Specialty Industries validly assigned its cause of action to Hairston did not alter this Court's holding that a validly assigned claim could be litigated in a garnishment proceeding.

-8-

Indeed, it is not clear that Burlington and Evanston could assert an anti-assignment provision in their contracts as a defense to a claim for bad-faith refusal to settle. See *Jawad A Shah, MD, PC v State Farm Mut Auto Ins Co*, 324 Mich App 182, 198-201; 920 NW2d 148 (2018). Even assuming that they could assert that defense, a claim that an assignment was invalid constitutes an affirmative defense that may be litigated in a garnishment proceeding. See MCR 3.101(M)(1); *Moorhouse v Ambassador Ins Co, Inc*, 147 Mich App 412, 419; 383 NW2d 219 (1985); see also *Meirthew v Last*, 376 Mich 33; 135 NW2d 353 (1965) (holding that the trial court did not err when it entered judgment against the garnishee defendant insurer even though the insurer disclaimed liability because the insurer failed timely to assert its defense). Specialty Industries also sued in its own name to recover the amount of its own loss caused by the bad-faith refusal to settle. Finally, the court rules applicable to garnishment proceedings further contemplate interpleading parties to resolve disputes over which of two parties was responsible for the debt, see MCR 3.101(L), and contemplate trial to resolve a dispute over the extent of the garnishee's liability to the judgment debtor, see MCR 3.101(M)(1) and (3).

The trial court also noted that Burlington and Evanston claimed that the amount of the excess judgment was subject to questions of fact concerning Specialty Industries' collectability. After the decision in *Rutter*, our Supreme Court adopted a rule that limits an insurer's liability for a bad-faith refusal to settle to contract damages; in the context of a claim that the insured was harmed by a bad-faith refusal to settle, the Court explained that the damages would not normally exceed an amount equal to the insured's net assets that were not exempt from legal process. Accordingly, the Court limited the damages available for a claim of bad-faith refusal to settle to those amounts. The Court stated that the rule provided protection to the insurer by precluding collection on the judgment beyond what is or would actually be collectible from the insured. See *Frankenmuth Mut Ins Co v Keeley*, 433 Mich 525, 562-565; 447 NW2d 691 (1989) (LEVIN, J., dissenting), adopted on reh in *Frankenmuth Mut Ins Co v Keely*, 436 Mich 372; 461 NW2d 666 (1990). The Supreme Court's decision in *Frankenmuth* supports the continued viability of the decision in *Rutter* because the Court there clearly identified the damages from a bad-faith refusal to settle as contract damages, which had traditionally been the subject of garnishment.

Moreover, that Burlington and Evanston might have to pay less than the full amount of the excess judgment does not render the damages unliquidated. The maximum liability can be readily determined by comparing the policy limits to the actual judgment, and the parties can present evidence about the amount that Specialty Industries could have been compelled to pay had Hairston executed his judgment against Specialty Industries. Indeed, it is undisputed that Specialty Industries already agreed to pay $1 million in exchange for a promise not to execute. In the context of a claim for bad-faith refusal to settle, the limits on the maximum recovery are akin to offsets, which can be litigated in a garnishment proceeding. See, e.g., *Ladd*, 303 Mich App at 99-100; see also MCR 3.101(M)(1).

Burlington argues on appeal that this Court should affirm the trial court's decision because the decision in *Rutter* relied on GCR 1963, 110.3, which abolished the technical forms of pleading, but was not continued into the current rules. As our Supreme Court has recognized, it abolished the technical forms of pleading under GCR 1963, 110.3, in favor of one form of action called a civil action, which is recognized in the current court rules under MCR 2.101(A). *Fisher Sand and Gravel Co v Neal A Sweebe, Inc*, 494 Mich 543, 564 n 59; 837 NW2d 244 (2013). Moreover, the Court in *Rutter* cited GCR 1963, 110.3 for the general proposition that the court rules should be

construed to secure the just, speedy, and inexpensive determination of all controversies. See *Rutter*, 57 Mich App at 171-172. That consideration continues to govern the proper interpretation of the current court rules: "These rules are to be construed, administered, and employed by the parties and the court to secure the just, speedy, and economical [i.e., inexpensive] determination of every action and to avoid the consequences of error that does not affect the substantial rights of the parties." MCR 1.105. Accordingly, this Court's reliance on those principles in *Rutter* did not undermine the continued applicability of its holding.

Based on the foregoing, we conclude that *Rutter* is binding precedent in the case at bar. It was erroneous for the trial court to have dismissed the writs on the mistaken belief that the decision in *Rutter* did not apply. This Court's decision in *Rutter* was carefully crafted, and directly considered the competing ways for litigating claims of bad-faith refusal to settle. This Court established a workable format that provided parties with flexibility and afforded them adequate and efficient processes for resolving the dispute. Burlington and Evanston have not convinced us that we should discard this long-settled precedent beyond a preference for compelling an assignee to litigate the claim in a separate and drawn-out proceeding. Accordingly, we reverse the trial court's order granting the motions to quash and dismissing the writs of garnishment.

## B. JURISDICTION

Hairston and Specialty Industries next argue that their suit was first in time notwithstanding that they filed their writs of garnishment after Burlington and Evanston filed their federal suit. In their view, a writ of garnishment does not initiate a new lawsuit. Instead, a writ of garnishment is an ancillary proceeding to the original suit that resulted in entry of a judgment. Generally, "[a] circuit court's ruling under MCR 2.116(C)(6) is reviewed de novo on the basis of the record as it existed at the time the ruling was made." *Planet Bingo, LLC v VKGS, LLC*, 319 Mich App 308, 325-326; 900 Mich 680 (2017). However, we note that the trial court did not grant Burlington's and Evanston's motions to dismiss under MCR 2.116(C)(6), and instead granted the motions under MCR 2.116(C)(8), because it concluded that a writ of garnishment was not a proper way to litigate an assigned claim of bad-faith refusal to settle and dismissed the writs on that basis. The trial court also did not determine whether the claims at issue in the federal case or the parties were identical, even though there was evidence concerning the federal litigation in the record. On this record, we are unable to conduct a de novo review of whether the claims at issue in this case should have been dismissed under MCR 2.116(C)(6), particularly in light of the fact that there may have been developments in the federal action while this case has been pending on appeal in this Court. On remand, we direct the trial court to address whether the case should have been be dismissed under MCR 2.116(C)(6). See *Planet Bingo, LLC*, 319 Mich App at 326-327.

## C. SANCTIONS

Finally, Hairston argues that the trial court abused its discretion by imposing sanctions against him. While we conclude that Hairston's legal position was correct and therefore not frivolous, we conclude that the court did not clearly err to the extent that it determined that Hairston interposed the writs for an improper purpose.

This Court reviews a trial court's decision to award sanctions for submitting a frivolous filing for an abuse of discretion. See *Sprenger v Bickle*, 307 Mich App 411, 422-423; 861 NW2d

52 (2014). A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes. *Slis*, 332 Mich App at 335. This Court reviews for clear error a trial court's findings underlying its decision to award sanctions. *Sprenger*, 307 Mich App at 423. A finding is clearly erroneous when this Court is left with the definite and firm conviction that the trial court has made a mistake. See *Guerrero v Smith*, 280 Mich App 647, 677; 761 NW2d 723 (2008). This Court reviews de novo whether the trial court properly interpreted and applied the statutes and court rules. *Brecht*, 297 Mich App at 736.

The trial court premised its decision to sanction Hairston on the conclusion that he filed the writ of garnishment without a valid basis in fact or law for doing so, or because he filed the writ for an improper purpose. Both the statute and court rule authorize a trial court to order sanctions when a filing or claim is frivolous. A filing or claim is frivolous when the party filing the claim or initiating the action has no reasonable basis to believe that the facts underlying its position are true or the party's legal position is devoid of arguable legal merit. See MCL 600.2591(3)(a)(*ii*) and (*iii*); MCR 1.109(E)(5)(b). Such a filing is also frivolous when it was interposed for an improper purpose, even if the action is otherwise supported by facts and law. See MCL 600.2591(3)(a)(*i*); MCR 1.109(E)(5)(c); see also *New Covert Generating Co, LLC v Covert Twp*, 334 Mich App 24, 96-97; 964 NW2d 378 (2020) (noting that the trial court can sanction a party for a filing that was not supported by the law or that was imposed for an improper purpose).

As previously discussed, this Court's decision in *Rutter* was good law and binding on the trial court. Under that precedent, Hairston has both a factual and legal right to litigate his claim for bad-faith refusal to settle in a garnishment proceeding.[3] Accordingly, to the extent that the trial court found that Hairston's filing of the writ of garnishment was frivolous because it was unsupported in fact or law, the trial court erred. See *Guerrero*, 280 Mich App at 677.

However, whether the trial court clearly erred by finding that Hairston interposed the writs for an improper purpose, such as to harass Burlington and Evanston, is less clear. Hairston's first motion involved a request to conduct supplemental proceedings. In that motion, Hairston indicated that Specialty Industries had assigned any claims that it might have had against Burlington and Evanston to Hairston, but Hairston did not at that time assert the right to litigate any claim in a garnishment proceeding. In response, Burlington and Evanston argued that supplementary proceedings were improper because such proceedings involved discovery and Hairston had not filed a proper garnishment action or action for declaratory judgment that would have satisfied the prerequisite for a supplemental proceeding.

At the hearing, the court identified the issue as one involving discovery. It then informed Hairston that it thought that the appropriate venue for his discovery was "in the federal court or in another court of competent jurisdiction in a declaratory action or some sort of breach of contract action." Notably, in its order denying the motion for supplemental proceedings, the trial court

---

[3] In making this pronouncement, we draw no conclusion as to whether the case should be dismissed under MCR 2.116(C)(6), as discussed in Section II-B, *supra*.

-11-

denied the motion for the reasons stated on the record without further elaboration or additional limitations, but it characterized the order as a final order that closed the case.

It was clear from the context that the trial court was unaware of any authority that would allow Hairston to litigate his assigned claim without filing a separate lawsuit. The discussion on the record supports an inference that Hairston understood that the trial court had foreclosed any further proceedings on his assigned claim in the underlying litigation, and advised him to either seek relief in another court of competent jurisdiction or seek review by this Court. Despite that, Hairston filed his writ of garnishment in the present action. Although the filing of the writ was plainly supported by the law, that does not preclude a finding that the decision was done to harass or cause a needless increase in litigation, which would also support an award of sanctions. See MCL 600.2591(3)(a)(*i*); MCR 1.109(E)(5)(c). Given the trial court's familiarity with the parties and the case before it, we defer to its finding that Hairston's purpose was to harass. See *New Covert Generating*, 334 Mich App at 96-97. Moreover, because Hairston has not identified any other basis for reversing the trial court's order awarding sanctions, we affirm. See *id*. at 97.

## III. CONCLUSION

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Michelle M. Rick
/s/ Christopher P. Yates

-12-