# Syllabus

Chief Justice:
Elizabeth T. Clement

Justices:
Brian K. Zahra
Richard H. Bernstein
Megan K. Cavanagh
Elizabeth M. Welch
Kyra H. Bolden
Kimberly A. Thomas

**This syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader.**

HAIRSTON v LKU

Docket No. 166473. Argued on application for leave to appeal December 4, 2024. Decided April 4, 2025.

Darnell Hairston filed writs of garnishment in the Ottawa Circuit Court against Burlington Insurance Company and Evanston Insurance Company for the unpaid balance of a judgment that was awarded to plaintiff following a jury trial. Plaintiff was seriously injured while operating soybean processing machinery as an employee of Zeeland Farm Soya, Inc, a division of Zeeland Farm Services, Inc. (collectively, ZFS). Specialty Industries, Inc., assisted ZFS in the design, installation, and maintenance of the machinery in the facility where plaintiff was injured. Plaintiff sued ZFS, as well as an employee of ZFS, Josh Woldring, who was originally identified as "Josh LKU [Last Name Unknown]." Plaintiff later amended his complaint to include Specialty Industries, Inc., as a defendant, asserting claims of products liability, negligence, and gross negligence; Specialty Industries was insured by Burlington and Evanston. Plaintiff and ZFS accepted a case evaluation award, and the trial court entered a stipulated order dismissing the claims against ZFS; the case evaluation process did not resolve plaintiff's claims against Specialty Industries. The action then proceeded to trial, at the conclusion of which the jury awarded $13,489,447.04 to plaintiff, plus an additional $240,451.02 in case evaluation sanctions. Burlington provided the primary insurance policy for ZFS with a $1 million limit per occurrence. Evanston provided a commercial excess liability policy with an $8 million limit for a single occurrence. Neither Burlington nor Evanston was named as a defendant in the underlying tort action, and plaintiff did not obtain a judgment against either insurer. The parties stipulated that Burlington and Evanston would provide coverage up to their respective limits plus additional coverage for interest. Specifically, Burlington paid plaintiff $1,108,416.47, and Evanston paid plaintiff $8,640,736.94. Plaintiff and Specialty Industries thereafter entered into an agreement whereby Specialty Industries agreed to pay plaintiff $1 million and assign to plaintiff its claims against Burlington and Evanston, including a claim of bad-faith refusal to settle. In exchange, plaintiff agreed that he would not execute the remainder of the judgment against Specialty Industries. Thereafter, plaintiff and Specialty Industries jointly moved for proceedings supplemental to judgment, asserting that before trial, plaintiff had submitted settlement offers to Specialty Industries with demands as low as $1.5 million and that Specialty Industries' highest settlement offer was $600,000—which was a lower amount than the case evaluation award that Specialty Industries rejected. Plaintiff sought additional discovery, arguing that Specialty Industries' actions might have constituted bad-faith refusal to settle. Before that motion was

decided, Burlington and Evanston filed an action in federal court, seeking a declaration that the insurers had acted in good faith and absolving them of any further obligations under the judgment. The state trial court, Jon Hulsing, J., later denied plaintiff and Specialty Industries' request for supplemental proceedings and stated that the federal court was the proper forum or, alternatively, that plaintiff and Specialty Industries could file a breach-of-contract action or seek declaratory relief against Burlington and Evanston in a different court with jurisdiction to resolve the matter. After the hearing, plaintiff served writs of garnishment on Burlington and Evanston, and Burlington and Evanston moved to quash and dismiss the writs. The trial court entered an order granting Burlington's and Evanston's motions on the basis that the writs were improper because there was no judgment before the writs were issued that Burlington and Evanston had acted in bad faith; the trial court also imposed sanctions against plaintiff for filing the writs after the court had rejected the motions for supplemental proceedings. The trial court denied plaintiff and Specialty Industries' motion for reconsideration, and they appealed. In a published decision, the Court of Appeals, RICK, P.J. and YATES, J. (SHAPIRO, J., concurring in part and dissenting in part), affirmed in part and reversed in part the trial court's order. ___ Mich App ___ (November 21, 2023) (Docket No. 363030). Relevant here, the Court of Appeals determined that they were bound to follow *Rutter v King*, 57 Mich App 152 (1974), which held that a validly assigned claim for bad-faith refusal to settle can be litigated in a garnishment proceeding rather than through a separate legal proceeding. For that reason, the Court of Appeals reversed the trial court's order granting Burlington's and Evanston's motions to quash and dismissing the writs of garnishment. The Court of Appeals affirmed the trial court's order awarding sanctions, stating that the trial court did not clearly err to the extent it determined that plaintiff filed the writs for an improper purpose. Burlington sought leave to appeal, and the Supreme Court ordered oral argument on the application to consider "whether a claim of bad-faith refusal to settle by an insurer can be litigated in a writ of garnishment." 513 Mich 1058, 1058 (2024).

In a unanimous opinion by Justice BOLDEN, in lieu of granting leave to appeal, the Supreme Court *held*:

Garnishment proceedings are governed by the applicable statutes and court rules. For a debt to be subject to garnishment, the debt must be wholly due and without contingency unless otherwise specifically authorized by statute or court rule. MCR 3.101(G)(1), which sets forth the categories of assets that are subject to garnishment, does not include in those categories claims of bad-faith refusal to settle. Specifically, an unresolved claim of bad-faith refusal to settle is not subject to garnishment under MCR 3.101(G)(1) because such a claim is not sufficiently liquidated and therefore cannot serve as the basis for the claim to be resolved through garnishment. Because plaintiff and Specialty Industries' claim of bad-faith refusal to settle was merely a potential claim that was not suitably liquidated, it could not be resolved through garnishment proceedings. The Court of Appeals erred by relying on *Rutter* rather than analyzing the relevant statutes and court rules governing garnishment proceedings and erred by reversing the trial court's order granting summary disposition to Burlington and Evanston and quashing the writs of garnishment. *Rutter* was wrongly decided to the extent it suggested that courts may look beyond the applicable statutes and court rules to determine whether jurisdiction may be exercised through garnishment.

1. Garnishment is a proceeding through which a party seeks to obtain a payment due, and a legal claim must be sufficiently liquidated before garnishment may attach. Thus, for a debt to

be subject to garnishment, the debt must be wholly due and without contingency unless otherwise specifically authorized by statute or court rule. MCL 600.4011(1)(b) provides that circuit courts have power by garnishment to apply certain property or obligations, or both, to satisfy a claim evidenced by contract, a Michigan judgment, or a foreign judgment; for purposes of Subsection (1)(b), an obligation is one that is owed to the person against whom the claim is asserted if the obligor is subject to the judicial jurisdiction of the state. MCR 600.4011(2) provides circuit courts authority to exercise garnishment jurisdiction, but the subrule requires courts to exercise that jurisdiction in accordance with the Michigan Court Rules. In other words, jurisdiction is only proper when permitted by Michigan's court rules. Of note here, MCR 3.101 governs postjudgment garnishment. MCR 3.101(G)(1) lists the categories of assets that are subject to garnishment, including Subrule (G)(1)(a) (garnishee is liable for all tangible or intangible property belonging to the defendant in the garnishee's possession); Subrule (G)(1)(d) (garnishee is liable for all debts, whether or not due, owing by the garnishee to the defendant); and Subrule (G)(1)(g) (garnishee is liable for all judgments in favor of the defendant against the garnishee). Potential, unresolved claims of bad-faith refusal to settle are not listed in MCR 3.101(G)(1) as a category subject to garnishment and, regardless, are not sufficiently liquidated and certain to allow for garnishment proceedings. Claims of bad-faith refusal to settle, even when resolved through a trial court, are highly complicated and unsuitable for resolution through garnishment proceedings. Further, although MCR 3.101(M) explains the procedures that must be followed when litigating disputes about a garnishee's liability, the type of claim must be suited for garnishment before those procedures may be followed. Importantly, the procedures for garnishment are not as robust as standard civil trial procedures and are ill-suited for litigating a claim of bad-faith refusal to settle. Thus, notwithstanding that MCR 3.101(M)(1) provides that "if there is a dispute regarding the garnishee's liability . . . , the issue shall be tried in the same manner as other civil actions," a claim of bad-faith refusal to settle is unsuited for garnishment and the information required to be provided in a request and writ for garnishment is insufficient to put a putative garnishee fully on notice of the substance of the underlying tort claim to properly defend against it. This is an additional reason why a claim must be sufficiently liquidated to proceed through garnishment.

2. MCR 3.101(G)(1) did not permit garnishment under the facts of this case. MCR 3.101(G)(1)(a)—which permits garnishment for "all . . . property belonging to the defendant in the garnishee's possession or control when the writ is served on the garnishee, unless the property is represented by a negotiable document of title held by a bona fide purchaser for value other than the defendant"—did not provide jurisdiction over this garnishment proceeding to the trial court because (1) Burlington and Evanston had already paid the full amount of their policy limits so neither was in possession of monetary insurance proceeds when the writs of garnishment were served, and (2) there had been no determination that the insurers owed any damages to plaintiff or Specialty Industries. MCR 3.101(G)(1)(d), which permits garnishment for "all debts, whether or not due, owing by the garnishee to the defendant when the writ is served on the garnishee, except for debts evidenced by negotiable instruments or representing the earnings of the defendant," also did not apply because, at the time the writs were served, it was premature to conclude that either insurer owed any debt to Specialty Industries. Stated differently, the debt remained uncertain until plaintiff or Specialty Industries proved that either insurer was liable for the asserted bad-faith refusal to settle. Therefore, neither MCR 600.4011 nor MCR 3.101(G)(1)(d) allowed the trial court to assert jurisdiction to secure the uncertain, contingent debt through a garnishment proceeding. Finally, MCR 3.101(G)(1)(g), which permits garnishment for "all judgments in favor

of the defendant against the garnishee in force when the writ is served on the garnishee," did not provide the trial court with jurisdiction because plaintiff and Specialty Industries did not have a judgment against either insurer; thus plaintiff and Specialty Industries failed to establish that their claim was sufficiently liquidated for the subrule to provide the trial court with jurisdiction over the garnishment proceeding. Because plaintiff and Specialty Industries had only a potential, contingent claim against the insurers, the trial court did not abuse its discretion by granting summary disposition to Burlington and Evanston and quashing the writs.

3. The Court of Appeals erred by reversing the trial court without analyzing MCR 3.101(G)(1) and instead holding that *Rutter* was binding. In *Rutter*, the plaintiff, who believed that the defendant insurer had engaged in bad-faith refusal to settle, served a writ of garnishment against the defendant insurer when the plaintiff was left with a judgment in excess of the coverage limits of the defendant's insurance policy. The trial court granted the defendant insurer's motion to dismiss, and the plaintiff appealed. The *Rutter* Court reversed the trial court order, reasoning that a claim of bad-faith refusal to settle resulting in an excess judgment was sufficiently liquidated for garnishment to attach because the excess damage amount was ascertainable given the clearly quantifiable difference between the policy's limits and the jury's verdict. Although the plaintiff's claim was contingent—because it would not become due and payable until the plaintiff established bad faith—all the events that would have established liability had already occurred, so it was subject to garnishment. The Court of Appeals erred when it found that there were no factual distinctions between this case and *Rutter*. Contrary to the Court of Appeals' conclusion, *Rutter* was not binding on the Court of Appeals because it was decided before November 1, 1990. In addition, the *Rutter* Court failed to address the garnishment court rules in place at the time it was decided, and *Rutter* was decided before MCR 3.101(G)(1) was adopted. The Court of Appeals in this case and the panel in *Rutter* both erred by failing to interpret the relevant court rules. *Rutter* was therefore wrongly decided to the extent it suggested that courts may look beyond the applicable statutes and court rules to determine whether jurisdiction may be exercised through garnishment. For these reasons, the Court of Appeals erred when it reversed the trial court order granting summary disposition to Burlington and Evanston and quashing the writs of garnishment.

Court of Appeals' judgment reversed and case remanded to the trial court for further proceedings.

Justice THOMAS did not participate because the Court considered this case before she assumed office.

# OPINION

Chief Justice:
  Elizabeth T. Clement

Justices:
Brian K. Zahra
Richard H. Bernstein
Megan K. Cavanagh
Elizabeth M. Welch
Kyra H. Bolden
Kimberly A. Thomas

FILED April 4, 2025

STATE OF MICHIGAN

SUPREME COURT

DARNELL HAIRSTON,

    Plaintiff/Garnishee Plaintiff-
    Appellee,

v

No. 166473

JOSH LKU, ZEELAND FARM SERVICES,
INC., ZEELAND FARM SOYA, INC., and
ZFS LICENSING, INC.,

    Defendants,

and

SPECIALTY INDUSTRIES, INC.,

    Defendant-Appellee,

and

BURLINGTON INSURANCE CO.,

    Garnishee Defendant-Appellant,

and

EVANSTON INSURANCE CO.,

Garnishee Defendant.

_____

BEFORE THE ENTIRE BENCH (except THOMAS, J.)

BOLDEN, J.

This case requires us to determine whether a claim that insurers engaged in bad-faith refusal to settle can be litigated through the filing of a writ of garnishment. Specifically, we must decide whether the trial court abused its discretion when it held that a claim of bad-faith refusal to settle could not be litigated through a garnishment proceeding and granted garnishee-defendants' motions to quash plaintiff's writs of garnishment. Although we have never addressed this question, the Court of Appeals, in *Rutter v King*, 57 Mich App 152; 226 NW2d 79 (1974), held that the defendant's alleged wrongful refusal to settle a claim was sufficiently liquidated to be resolved through a writ of garnishment rather than through a separate legal proceeding. Here, the Court of Appeals considered *Rutter* to be binding and reversed the trial court's order granting the motions to quash. *Hairston v LKU*, ___ Mich App ___; ___ NW3d ___ (November 21, 2023) (Docket No. 363030); slip op at 6-10.

We now hold that the Court of Appeals erred. The Legislature has authorized trial courts to exercise their jurisdiction to hear writs of garnishment in accordance with our court rules. MCL 600.4011. The applicable court rule, MCR 3.101(G)(1), defines the assets that can be obtained through a garnishment proceeding and does not include claims of bad-faith refusal to settle. *Rutter* was decided before MCR 3.101(G)(1) was adopted, but to the extent that *Rutter*'s analysis lends itself to interpreting MCR 3.101(G)(1) more

2

broadly than it is written, it was wrongly decided.  We reverse and remand to the trial court for further proceedings consistent with this opinion.

## I.  FACTS AND PROCEDURAL HISTORY

On August 29, 2016, plaintiff, Darnell Hairston, was hired to work as a plant operator at a soybean processing facility owned or operated in Ottawa County by defendant Zeeland Farm Services, Inc. (ZFS).[1]  Plaintiff's first day working in the plant was September 19, 2016.  Less than three weeks later, plaintiff sustained serious injuries while operating machinery on the job.  As a result of these injuries, plaintiff required medical attention, including the amputation of his right hand and right forearm.

On June 19, 2017, plaintiff sued ZFS and Josh Woldring, the team leader in the division where plaintiff worked at the time of his injury.[2]  Plaintiff later moved to amend his complaint to add Specialty Industries, Inc., as a defendant.  Specialty Industries was the contractor hired to assist ZFS in the design, installation, and maintenance of the soybean processing machinery in the facility where plaintiff was injured.  Plaintiff raised claims of products liability, negligence, and gross negligence against Specialty Industries, specifically

---

[1] Defendant Zeeland Farm Services, Inc., is a corporation that owns, licenses, or operates several divisions, including the division where plaintiff was injured, defendant Zeeland Farm Soya, Inc.  The disputes in this case do not require us to distinguish between these defendants in any meaningful sense, so for the purposes of this opinion, both defendants will be collectively referred to as ZFS.

[2] When plaintiff initially filed this lawsuit, he did not know Woldring's last name.  Plaintiff sued him as Josh LKU, a shorthand reference for "last name unknown."  See *Hairston*, ___ Mich App at ___; slip op at 2.  The caption to the case still reflects Josh LKU as a named defendant.

alleging that Specialty Industries' negligence in the design of the machinery caused plaintiff's injuries. The trial court granted plaintiff's motion to amend.

On December 6, 2019, the court entered a stipulation to dismiss ZFS and Woldring from the litigation because plaintiff, ZFS, and Woldring had accepted a case evaluation award. However, the case evaluation process did not yield a resolution of plaintiff's claims against Specialty Industries, and these claims proceeded to trial.[3]

After a seven-day trial, the jury found that Specialty Industries was negligent and grossly negligent and that the gross negligence was the proximate cause of plaintiff's injuries. Further, the jury attributed 80% of the fault to Specialty Industries. On December 3, 2021, the trial court entered a judgment against Specialty Industries for $13,489,447.04, with an additional $240,451.02 in case evaluation sanctions.[4]

Specialty Industries had insurance policies in effect with two separate insurers that are applicable to this accident. Garnishee-defendant-appellant Burlington Insurance Company provided the primary insurance policy with a $1 million limit per occurrence, and garnishee-defendant-appellant Evanston Insurance Company provided a commercial excess liability policy with an $8 million limit for a single occurrence. Neither Burlington nor Evanston was named as a defendant in the underlying tort action, nor has plaintiff obtained

---

[3] Specialty Industries rejected a case evaluation award of $800,000.

[4] Michigan operates under a comparative negligence regime that " 'distributes legal responsibility according to the fault of the respective parties.' " *Placek v Sterling Hts*, 405 Mich 638, 660; 275 NW2d 511 (1979), quoting Schwartz, *Comparative Negligence* (Indianapolis: Allen Smith Co, 1974), § 21.3, p 347. The jury attributed no fault to plaintiff; 80% fault to Specialty Industries; and 20% fault to ZFS, which was no longer a party to the case at the time of trial. Neither the allocation of fault nor the judgment amount is the subject of this appeal.

a judgment against either insurer. The parties stipulated that Burlington and Evanston—as Specialty Industries' insurers—would provide coverage up to these respective limits plus additional coverage for interest. Specifically, the parties stipulated that Burlington would satisfy a partial judgment amount of $1,108,416.47, and Evanston would satisfy an additional $8,640,736.94.

The stipulation was entered, and Burlington and Evanston satisfied these payments to plaintiff. However, the judgment was only partially satisfied.[5] On January 18, 2022, plaintiff and Specialty Industries entered into an agreement whereby Specialty Industries agreed to pay plaintiff $1,000,000 and assigned to plaintiff any and all possible actions against Burlington and Evanston, including claims of bad-faith refusal to settle.[6] In exchange, plaintiff agreed that he would not execute the remainder of the judgment against Specialty Industries.

Subsequently, plaintiff and Specialty Industries jointly moved for proceedings supplemental to the judgment. In the motion, the parties asserted that before trial, plaintiff submitted settlement offers to Specialty Industries with demands as low as $1.5 million and that Specialty Industries' highest settlement offer was $600,000—lower than the case evaluation amount that Specialty Industries rejected. Plaintiff and Specialty Industries also

---

[5] The total judgment amount, including sanctions, was $13,729,898.06. The parties stipulated that Burlington and Evanston would combine to cover a total of $9,749,153.41 of that obligation. The judgment also included a requirement that interest would accrue with every day the judgment remained past due and unsatisfied. Accordingly, after this stipulation, Specialty Industries owed at least $3,980,744.65 to plaintiff to satisfy the total judgment.

[6] With Specialty Industries providing this additional amount to plaintiff, at least $2,980,744.65 remained as a judgment amount yet to be satisfied.

asserted that during settlement negotiations, Burlington did not provide Specialty Industries with an amount that Burlington would provide through the policy to facilitate settlement and Evanston offered nothing. Plaintiff and Specialty Industries argued that the insurers' actions may have constituted bad-faith refusal to settle and requested that the court exercise its discretion to permit additional discovery to facilitate the collection of the outstanding judgment.

The trial court denied the motion after a hearing.[7] The trial court held that a different lawsuit was required because there remained questions of fact about whether Burlington and Evanston had engaged in bad faith and that a different forum might be required to litigate this claim.[8] The trial court opined that the federal action commenced by Burlington and

---

[7] Prior to the hearing, Burlington and Evanston filed a lawsuit against plaintiff and Specialty Industries in the United States District Court for the Western District of Michigan, seeking a declaratory judgment providing that they did not engage in bad-faith refusal to settle. Although the trial court noted that the federal proceeding might be the appropriate venue for continuing to litigate the merits of the claim, the federal lawsuit has no bearing on the question before this Court and is not further addressed within this opinion.

[8] Notably, during the hearing, counsel representing Burlington stated the following:

> Ultimately, as [plaintiff's counsel] has indicated and as his pleadings have stated, he intends to file a bad faith claim against Burlington and against Evanston and he intends to seek over-policy limits to pay for the remainder of the judgment. His first step to do that, your Honor, is to file a lawsuit either in the form of a writ of garnishment or in the form of a declaratory judgment action. Once that's done, the parties go through initial disclosures and ultimately at that point they're entitled to seek discovery, but the law does not permit a deviation from that. It does not permit [plaintiff's counsel] to seek discovery now.

Plaintiff and Specialty Industries now argue that this statement was an express waiver by Burlington of its right to contest the propriety of the current postjudgment garnishment

6

Evanston was the proper forum to litigate the unresolved claim of bad-faith refusal to settle. Alternatively, the court opined that plaintiff could file a breach-of-contract action or seek declaratory relief against Burlington and Evanston in a different court with jurisdiction to resolve the matter.

After the hearing, plaintiff served writs of garnishment against Burlington and Evanston for the amount of the judgment yet to be satisfied. Burlington filed a garnishee disclosure, denying any special debt to Specialty Industries and denying any possession of Specialty Industries' property that could be liquidated through garnishment. Burlington and Evanston separately moved to quash and dismiss plaintiff's writs of garnishment. Plaintiff and Specialty Industries opposed the motions.[9] After a hearing, the trial court granted the motions, holding that plaintiff failed to state a claim under MCR 2.116(C)(8), and thus, no relief could be granted.[10] Plaintiff and Specialty Industries unsuccessfully moved for reconsideration.

---

proceedings. Without expressing any position on whether a party could waive into a garnishment proceeding, we reject the invitation to categorize Burlington's position as waiving any legal rights. "[W]aiver is the intentional relinquishment of a known right." *Sweebe v Sweebe*, 474 Mich 151, 156-157; 712 NW2d 708 (2006) (quotation marks and citation omitted). "[A] waiver must simply be explicit, voluntary, and made in good faith." *Id*. at 157. We disagree that these statements constitute a waiver. Instead, we consider Burlington's position to be nothing more than advocating that postjudgment discovery was an improper venue for litigating the issues raised in plaintiff's and Specialty Industries' joint motion.

[9] Although plaintiff served the writs on Burlington and Evanston, Specialty Industries joined plaintiff by filing a joint brief opposing Burlington's and Evanston's motions to quash and dismiss.

[10] The trial court also ordered sanctions against plaintiff premised on its conclusion that plaintiff had acted in contravention of the previous postjudgment order and had presented

Plaintiff and Specialty Industries appealed. The Court of Appeals affirmed in part, reversed in part, and remanded. *Hairston*, ___ Mich App at ___; slip op at 2, 10. Burlington sought leave to appeal in our Court, and we ordered oral argument on the application. *Hairston v LKU*, 513 Mich 1058 (2024). Specifically, we asked the parties to address "whether a claim of bad-faith refusal to settle by an insurer can be litigated in a writ of garnishment." *Id.*, citing MCR 3.101(G)(1) and *Rutter*, 57 Mich App 152.

## II. ANALYSIS

## A. STANDARD OF REVIEW

This case requires us to review whether the trial court properly granted Evanston's and Burlington's motions for summary disposition. On appeal, we review de novo a trial court's grant or denial of summary disposition. *Ray v Swager*, 501 Mich 52, 61-62; 903 NW2d 366 (2017). Questions involving the proper interpretation of statutes and our court rules are questions of law, which are also reviewed de novo. See *CAM Constr v Lake Edgewood Condo Ass'n*, 465 Mich 549, 553; 640 NW2d 256 (2002) (explaining that "interpretation of a court rule, like a matter of statutory interpretation, is a question of law"). "De novo review means we review the legal issues independently without deferring to the legal interpretation of the lower courts." *Carter v DTN Mgt Co*, ___ Mich ___, ___; ___ NW3d ___ (July 29, 2024) (Docket No. 165425); slip op at 9, citing *Safdar v Aziz*, 501 Mich 213, 217; 912 NW2d 511 (2018).

---

frivolous legal arguments. Because plaintiff did not appeal that issue in this Court, we do not address it within this opinion.

A decision regarding a motion to quash a writ of garnishment is reviewed for an abuse of discretion. *Brookdale Cemetery Ass'n v Lewis*, 342 Mich 14, 19; 69 NW2d 176 (1955) (holding that "there was no abuse of discretion in quashing the writs of garnishment") (quotation marks and citation omitted). A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes. *Woodman v Dep't of Corrections*, 511 Mich 427, 439; 999 NW2d 463 (2023), citing *Maldonado v Ford Motor Co*, 476 Mich 372, 388; 719 NW2d 809 (2006). A court necessarily abuses its discretion when its decision is based on an error of law. *Woodman*, 511 Mich at 439-440, citing *Pirgu v United Servs Auto Ass'n*, 499 Mich 269, 274; 884 NW2d 257 (2016).

## B. LEGAL BACKGROUND

### 1. WRITS OF GARNISHMENT

Garnishment is a proceeding through which a party seeks to obtain a payment due. See generally 38 CJS, Garnishment, § 1. This Court has long held that a legal claim needs to be sufficiently liquidated before garnishment may attach. In *Detroit Post & Tribune Co v Reilly*, 46 Mich 459; 9 NW 492 (1881), we held that in a libel suit, garnishment was improper because "until a judgment was entered up on [sic] the verdict there is no indebtedness that could be garnisheed." *Id*. at 460, citing *Hill v Bowman*, 35 Mich 191 (1876).

Whether garnishment is authorized is a statutory question that must be strictly construed. MCL 600.4011; see also *Krakowsky v Margolis*, 255 Mich 3, 5; 237 NW 28 (1931); *Nationsbanc Mtg Corp of Ga v Luptak*, 243 Mich App 560, 564; 625 NW2d 385 (2000). The pertinent statutory language explains, in part:

9

(1) . . . [T]he court has power by garnishment to apply the following property or obligation, or both, to the satisfaction of a claim evidenced by contract, judgment of this state, or foreign judgment, whether or not the state has jurisdiction over the person against whom the claim is asserted:

(a) Personal property belonging to the person against whom the claim is asserted but which is in the possession or control of a third person if the third person is subject to the judicial jurisdiction of the state and the personal property to be applied is within the boundaries of this state.

(b) An obligation owed to the person against whom the claim is asserted if the obligor is subject to the judicial jurisdiction of the state.

(2) Except as provided in sections 4061 and 4061a, the court may exercise the jurisdiction granted in this section only in accordance with the Michigan court rules. Except as otherwise provided by sections 4061 and 4061a and the Michigan court rules, the state and each governmental unit within the state, including but not limited to a public, municipal, quasi-municipal, or governmental corporation, unincorporated board, public body, or political subdivision, may be proceeded against as a garnishee in the same manner and with the same effect as a proceeding against an individual garnishee. [MCL 600.4011.]

Thus, although MCL 600.4011(2) "provides the authority for the circuit court to exercise garnishment jurisdiction, the court must do so within the parameters established in the Michigan Court Rules." *Royal York of Plymouth Ass'n v Coldwell Banker Schweitzer Real Estate Servs*, 201 Mich App 301, 305; 506 NW2d 279 (1993).

Here, plaintiff served a writ of garnishment corresponding to the unsatisfied debt resulting from the judgment plaintiff obtained against Specialty Industries at trial. Through an assignment, plaintiff obtained from Specialty Industries the right to attempt to collect on that debt against Burlington and Evanston. Plaintiff and Specialty Industries are seeking postjudgment garnishment of the remaining debt. Thus, MCR 3.101, which governs postjudgment garnishment, guides our analysis. MCR 3.101(G)(1) articulates several

categories of assets that may be subject to garnishment. It explains, in pertinent part, as follows:

> Subject to the provisions of the garnishment statute and any setoff permitted by law or these rules, the garnishee is liable for
>
> (a) all tangible or intangible property belonging to the defendant in the garnishee's possession or control when the writ is served on the garnishee, unless the property is represented by a negotiable document of title held by a bona fide purchaser for value other than the defendant;
>
> * * *
>
> (d) all debts, whether or not due, owing by the garnishee to the defendant when the writ is served on the garnishee, except for debts evidenced by negotiable instruments or representing the earnings of the defendant;
>
> * * *
>
> (g) all judgments in favor of the defendant against the garnishee in force when the writ is served on the garnishee[.] [MCR 3.101(G)(1).]

This case asks us to determine whether an unresolved claim alleging that insurers—here, Burlington and Evanston—engaged in bad-faith refusal to settle, resulting in a jury award in excess of the liability covered by their plans, falls within the scope of MCR 3.101(G)(1).

## 2. THE COURT OF APPEALS' DECISION IN *RUTTER*

The question presented in this case is a matter of first impression for this Court, but decades ago, the Court of Appeals held that garnishment was permissible in a decision that was never appealed in this Court. *Rutter*, 57 Mich App 152. Similar to the facts in the instant matter, *Rutter* involved a plaintiff who served a writ of garnishment against a defendant insurer when the plaintiff was left with a judgment in excess of the defendant's

11

insurance policy coverage limits. *Id*. at 155. The plaintiff in *Rutter* also believed that the insurer engaged in bad-faith refusal to settle. *Id*. at 156. The trial court granted summary disposition in the insurer's favor, and the matter eventually proceeded to a bankruptcy court, which assigned the debtor's claim against the insurer to the plaintiff. *Id*. at 156-157. The question of whether the trial court abused its discretion in determining that the plaintiff could not proceed directly through garnishment of the insurer for the excess amount due was then appealed in the Court of Appeals. *Id*. at 155. The Court of Appeals reversed. *Id*. at 172.

*Rutter*, which was decided before MCR 3.101(G)(1) was adopted, first noted that several jurisdictions considering this question were split on the answer, but that the result depended largely on the provisions written in those states' garnishment statutes.[11] *Id*. at 166. The panel found that the distinction between jurisdictions was whether the underlying claim sounded in tort, contract, or both; jurisdictions denying garnishment as a proper remedy found that the action sounded in tort, and jurisdictions allowing garnishment found that it sounded, at least in part, in contract. *Id*. at 166-167. The panel then noted that the claim at issue sounded both in tort and contract because the insurer's obligation to protect its insured from an excess judgment arose out of contract and the failure to do so sounded in tort. *Id*. at 168. In this sense, *Rutter* concluded that a claim of bad-faith refusal to settle resulting in an excess judgment was "sufficiently liquidated" for garnishment to attach

---

[11] MCR 3.101(G)(1) is part of the Michigan Court Rules, which were first adopted in 1985. *Rutter* was decided in 1974, 11 years before their enactment, at a time when the Michigan General Court Rules of 1963 were still in effect. Although the governing statute before us, MCL 600.4011, was the statute in effect at the time *Rutter* was decided, the relevant court rule has now changed, given the intervening enactment of the Michigan Court Rules.

because the excess damage amount was ascertainable given the clearly quantifiable difference between the policy's limits and the jury's verdict. *Id*. at 169-170. Although the plaintiff's claim was contingent—because it would not become due and payable until the plaintiff established bad faith—all the events that would have established liability had already occurred, so it was subject to garnishment. *Id*. at 170, citing 38 CJS, Garnishment, § 87, p 291; *Allstate Ins Co v Morrison*, 146 Ind App 497; 256 NE2d 918 (1970). The panel concluded that as a matter of efficiency, it made little sense to require the judgment creditor to initiate a new lawsuit to determine whether it could establish its claim and, for those reasons, reversed the trial court's decision. *Rutter*, 57 Mich App at 172.

### 3. LOWER COURTS' ANALYSES OF THE CLAIM OF BAD-FAITH REFUSAL TO SETTLE

As already noted, the trial court granted Burlington's and Evanston's motions for summary disposition. The trial court observed that "[t]here is no judicial determination[,] nor is there a judgment, that either or both of the garnishees acted in bad faith" and, given that MCR 3.101(G)(1)(g) requires that a judgment must be "in force when the writ is served on the garnishee," the claim could not be pursued through a writ of garnishment. Holding otherwise would allow plaintiff to "use the garnishment action to try to obtain the very judgment that he intends to garnish." The trial court also rejected plaintiff's reliance on *Rutter* because it was decided before MCR 3.101(G)(1) was adopted and the Court of Appeals had not cited *Rutter* in subsequent cases, instead strictly adhering to the language of the court rule when deciding these questions. Thus, the trial court granted the motions for summary disposition.

13

The Court of Appeals reversed, concluding that—despite the evolution of our court rules—*Rutter* was binding in holding, as a matter of law, that a plaintiff who had been assigned a claim of bad-faith refusal to settle could litigate the insurer's liability through a garnishment proceeding. *Hairston*, ___ Mich App at ___; slip op at 7-8. The panel held that the trial court should have concluded that *Rutter* was binding for the purposes of stare decisis because, although *Rutter* was decided before MCR 3.101(G)(1)(g) was adopted, there was a substantially similar provision in the governing body of court rules at the time, namely GCR 1963, 738.5(6). *Id*. at ___; slip op at 7-8. Further, the panel concluded that, although *Rutter* did not cite GCR 1963, 738.5(6), it "impliedly rejected the contention that that rule precluded application of the writ to such a claim" when it rejected the claim that a claim of bad-faith refusal to settle was unliquidated and sounded in tort. *Id*. at ___; slip op at 8. Next, the panel rejected the idea that decisions more recently decided than *Rutter* undermined its holding because there had been no binding caselaw addressing claims for bad-faith refusal to settle. *Id*. at ___; slip op at 8. Simply put, the Court of Appeals found no factual distinctions between this case and *Rutter*, so it held that the trial court erred by declining to apply its binding precedent when granting the motions for summary disposition. *Id*. at ___; slip op at 10.

## C. APPLICATION

We reverse. We hold that the claim of bad-faith refusal to settle brought by plaintiff and Specialty Industries against Burlington and Evanston is not sufficiently liquidated to be litigated through garnishment proceedings. Thus, the trial court did not abuse its discretion when it quashed the writs of garnishment at issue.

14

Garnishment is appropriate as to "[p]ersonal property belonging to the person against whom the claim is asserted but which is in the possession or control of a third person," MCL 600.4011(1)(a), or "[a]n obligation owed to the person against whom the claim is asserted," MCL 600.4011(1)(b). Jurisdiction may be exercised "*only* in accordance with the Michigan court rules." MCL 600.4011(2) (emphasis added). Garnishment statutes are to be strictly construed. *Krakowsky*, 255 Mich at 5. Thus, jurisdiction is *only* proper when permitted by our court rules. See *Merriam-Webster's Collegiate Dictionary* (11th ed) (defining "only," in pertinent part, as "a single fact or instance and nothing more or different"). Accordingly, whether summary disposition was appropriate requires an interpretation of the applicable court rule, MCR 3.101(G)(1).

### 1. MCR 3.101(G)(1) DOES NOT PERMIT CLAIMS OF BAD-FAITH REFUSAL TO SETTLE TO BE RESOLVED THROUGH GARNISHMENT

The claim of bad-faith refusal to settle at issue here does not fall within MCR 3.101(G)(1). Plaintiff and Specialty Industries offer no analysis of the MCR 3.101(G)(1) subrules that would allow the trial court to exercise jurisdiction over these writs of garnishment. Rather, they argue that the court rules should not be strictly read because strict construction leads to absurd or unintended results by way of inefficiency and because the Court of Appeals correctly held that *Rutter* was binding. We reject both arguments.

Plaintiff's theory allows for three possible avenues for a writ of garnishment under MCR 3.101(G)(1), which are described in Subrules (1)(a), (d), and (g). None of these subrules provides for the trial court to assert jurisdiction over this unresolved claim of bad-faith refusal to settle because each subrule requires the claim to be more settled and less

15

contingent than the claim offered as the basis for the writs of garnishment served on Burlington and Evanston.

To start, MCR 3.101(G)(1)(a) permits garnishment for "all . . . property belonging to the defendant in the garnishee's possession or control when the writ is served on the garnishee, unless the property is represented by a negotiable document of title held by a bona fide purchaser for value other than the defendant[.]" Given that Burlington and Evanston have already paid the full amount of their policy limits, it cannot be said that either insurer was in possession of monetary insurance proceeds owed to Specialty Industries when the writs of garnishment were served. Plaintiff and Specialty Industries do not argue otherwise, but instead, they suggest that the unpaid debts attached to the assignment plaintiff received from Specialty Industries. However, until that claim can be litigated to conclusion, there is no determination that either Burlington or Evanston owes any damages to plaintiff or Specialty Industries. Thus, plaintiff and Specialty Industries have not established that the amount they sought to garnish was property in possession of the insurers that was owned by Specialty Industries, and MCR 3.101(G)(1)(a) does not permit garnishment.

Next, MCR 3.101(G)(1)(d) permits garnishment for "all debts, whether or not due, owing by the garnishee to the defendant when the writ is served on the garnishee, except for debts evidenced by negotiable instruments or representing the earnings of the defendant[.]" However, at the time the writs of garnishment were served, it was premature to conclude that either insurer owed any debt to Specialty Industries. For a debt to be subject to garnishment, the general rule is that the debt "must be due absolutely, and without contingency" unless otherwise specifically authorized by statute or court rule.

16

38 CJS, Garnishment, § 98. Until plaintiff or Specialty Industries has proven that either insurer is liable for their bad-faith refusal to settle, the debt remains uncertain and is not due. Neither MCL 600.4011 nor MCR 3.101(G)(1)(d) allows a trial court to assert jurisdiction to secure this uncertain, contingent debt through a garnishment proceeding.

Finally, MCR 3.101(G)(1)(g) permits garnishment for "all judgments in favor of the defendant against the garnishee in force when the writ is served on the garnishee[.]" However, as the trial court correctly concluded, plaintiff and Specialty Industries do not have a judgment *against* either insurer. Rather, what they have is merely a potential cause of action against them and a maximum monetary limit of damages for that new claim. Any liability and legal theories have yet to be established, and the insurers were never parties to the initial lawsuit. Plaintiff and Specialty Industries have not shown that their claim was sufficiently liquidated for the court rules to authorize the trial court to take jurisdiction to resolve the matter through a proceeding instituted by serving a writ of garnishment. Before plaintiff has valid writs of garnishment to serve against the garnishees—i.e., the insurers— he must possess more than a mere potential, contingent claim. He does not, and the trial court did not abuse its discretion, or otherwise err, by granting summary disposition and quashing the writ.[12]

The Court of Appeals reversed the trial court without analyzing MCR 3.101(G)(1), instead holding that *Rutter* was binding. This was erroneous.

---

[12] Because we hold that the court rules do not support the trial court having jurisdiction over this claim, it is unnecessary for us to consider Burlington's argument that the Court of Appeals' judgment deprived Burlington of its constitutional rights.

17

## 2. ERRORS IN *RUTTER*'S ANALYSIS

First, we note that *Rutter* was decided in 1974, and there is no requirement under our court rules that a subsequent panel of the Court of Appeals must follow caselaw of the Court of Appeals decided prior to November 1, 1990. MCR 7.215(J)(1). As we have previously stated, "subsequent panels [of the Court of Appeals] are not bound under MCR 7.215(J)(1) to follow a rule established in a published opinion against their better judgment if it predates November 1, 1990[.]" *Schaumann-Beltran v Gemmete*, 509 Mich 979, 980 n 1 (2022). The trial court correctly asserted many valid reasons for doubting *Rutter*'s continuing viability.

The primary reason why *Rutter* is no longer valid is that it was decided before MCR 3.101(G)(1) was adopted. The Court of Appeals declined to interpret MCR 3.101(G)(1) and instead relied on *Rutter*. *Hairston*, ___ Mich App at ___, slip op at 9-10. The Court of Appeals noted similarities between MCR 3.101(G)(1) and several subrules of its predecessor, GCR 1963, 738, and explained that, although *Rutter* did not analyze GCR 1963, 738, *Rutter* "impliedly rejected the contention that that rule precluded application of the writ to such a claim." *Id*. at ___; slip op at 8. However, the Court of Appeals rested on this conclusion rather than analyzing the applicable current court rules. *Rutter* erred by failing to address the garnishment court rules in place at the time of its holding, and the Court of Appeals panel in this case made the same mistake, instead noting that the predecessor court rules were considered by implication in *Rutter*. *Id*. at ___; slip op at 8. We reject this analysis. The answer to this question lies in the interpretation of our court rules, which neither this Court of Appeals panel nor *Rutter* interpreted in reaching their holdings.

18

Instead of interpreting the court rules, *Rutter* concluded that a claim of bad-faith refusal to settle did not sound exclusively in tort and that other jurisdictions that had denied garnishment concluded that those claims sounded in tort. *Rutter*, 57 Mich App at 166-169. Next, *Rutter* held that the damages were ascertainable and that "all the events that would establish liability have occurred and the only remaining contingency is the establishment of bad faith." *Id*. at 170. But subsequent opinions of our Court have established that claims of bad faith in this context are not sufficiently liquidated and require scrutiny by a fact-finder.

3. GARNISHMENT REQUIRES CLAIMS TO BE SUFFICIENTLY LIQUIDATED

Two cases highlight the reasons that an unresolved claim of bad-faith refusal to settle is not sufficiently liquidated and cannot serve as the basis for resolution through garnishment. Both cases demonstrate that a claim of bad-faith refusal to settle is more complicated than being reduced to a holding that the claim was ripe for garnishment because "all the events that would establish liability have occurred . . . ." *Rutter*, 57 Mich App at 170.

First, in *Commercial Union Ins Co v Liberty Mut Ins Co*, 426 Mich 127, 137-139; 393 NW2d 161 (1986), this Court articulated 12 factors that may be included in jury instructions when a fact-finder is determining whether liability exists for bad faith. No single factor is dispositive, *id*. at 137, and "[a] microscopic examination, years after the fact, made with the luxury of actually knowing the outcome of the original proceeding is not appropriate," *id*. at 139. Second, in *Frankenmuth Mut Ins Co v Keeley*, 433 Mich 525; 447 NW2d 691 (1989), this Court considered how damages to an insured party were to be

limited when an insurer breached its duty to settle a claim. In separate opinions by Justice ARCHER, joined by Chief Justice RILEY, and concurring opinions by Justice BOYLE and Justice CAVANAGH, the Court adopted an excess-judgment rule, holding that "when an insurer has exhibited bad faith in failing to settle a claim on behalf of its insured, and a judgment in excess of the policy limits results, the insurer is liable for the excess without regard to whether the insured has the capacity to pay." *Id*. at 528 (opinion by ARCHER, J.); *id*. at 544 (CAVANAGH, J., concurring); *id*. (BOYLE, J., concurring). Justice LEVIN dissented, proposing a rule that would "accept the essence of the judgment rule by eliminating the need to show partial payment, but provide protection for insurers along the lines of the prepayment rule by precluding collection on the judgment from the insurer beyond what is or would actually be collectable from the insured." *Id*. at 565 (LEVIN, J., dissenting). On rehearing, Justice LEVIN's dissent was adopted as the majority approach. *Frankenmuth Mut Ins Co v Keeley (On Rehearing)*, 436 Mich 372, 376; 461 NW2d 666 (1990). These cases collectively show that claims of bad-faith refusal to settle, even when resolved through a trial court, are highly complicated and unsuitable for resolution through garnishment proceedings.

Further, although MCR 3.101(M) explains the procedures to follow when litigating disputes about a garnishee's liability, the type of claim must be suited for garnishment before these procedures may be followed. Notably, the procedures for garnishment are not as robust as standard civil trial procedures and are ill-suited for litigating a claim of bad-faith refusal to settle. For example, a creditor initiating garnishment proceedings must file the request and writ for garnishment on a form generated by the State Court Administrative Office (SCAO). MCR 3.101(C). Unlike the requirements for filing a complaint, the court

20

rules governing garnishment do not require a creditor to set forth factual allegations or a theory of liability in their request and writ for garnishment, nor do SCAO forms provide space for that information. MCR 3.101(D); SCAO, *Form MC 12* (March 2023) [https://perma.cc/EY3T-VKJ9]; SCAO, *Form MC 13* (November 2024) [https://perma.cc/XX4V-AA2T]. So notwithstanding that MCR 3.101(M)(1) provides that "[i]f there is a dispute regarding the garnishee's liability . . . , the issue shall be tried in the same manner as other civil actions," a claim of bad-faith refusal to settle is still unsuited for garnishment and the information required to be provided in a request and writ for garnishment is insufficient to put a putative garnishee fully on notice of the substance of the underlying tort claim to properly defend against it. This is an additional reason why a claim must be sufficiently liquidated to proceed through garnishment.

MCR 3.101(G)(1) does not permit this claim of bad-faith refusal to settle to be resolved through garnishment proceedings. The trial court correctly interpreted MCR 3.101(G)(1) when it granted the motions for summary disposition and quashed the writs of garnishment. The Court of Appeals erred by looking to *Rutter* as binding and compelling in this case rather than looking to and properly interpreting the court rules. In the process, the Court of Appeals reached the wrong result. To the extent that *Rutter* suggests that courts may look beyond the applicable statutes and court rules to determine whether jurisdiction may be exercised through garnishment, it was wrongly decided.

## III. CONCLUSION

The claim that Burlington and Evanston may have engaged in bad-faith refusal to settle is merely a potential claim, which is not sufficiently liquidated to be suitably resolved

21

through garnishment proceedings.  Such a claim is not permitted by MCR 3.101(G)(1).  The Court of Appeals erred by reversing the trial court.  Accordingly, we reverse the judgment of the Court of Appeals and remand the case to the Ottawa Circuit Court for further proceedings consistent with this opinion.

Kyra H. Bolden
Elizabeth T. Clement
Brian K. Zahra
Richard H. Bernstein
Megan K. Cavanagh
Elizabeth M. Welch


THOMAS, J., did not participate because the Court considered this case before she assumed office.

22